ARANDES, DEMANDANTE Y APELADO, *v.* BÁEZ, DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., en un caso sobre nulidad de declaratoria de heredero y partición de herencia.

No. 994.—Resuelto en mayo 1, 1914.

PARTICIÓN DE HERENCIA—ERROR DE HECHO.—El artículo 1048 del Código Civil se refiere a un error de hecho y no de derecho en la designación de herederos que intervienen en una partición de herencia.

PAGO INDEBIDO—ERROR DE DERECHO.—Por regla general no debe recuperarse el pago voluntario hecho bajo error de derecho.

PARTICIÓN DE HERENCIA—CUOTA USUFRUCTUARIA—SUCESIÓN INTESTADA.—Cuando de acuerdo con la opinión que ha prevalecido de que la viuda tiene derecho a una cuota usufructuaria en la sucesión intestada hasta que se sentó la doctrina contraria en el caso de *Julbe* v. *Guzmán,* 16 D. P. R., 530, se hace una partición de herencia en la cual se le adjudica a la viuda cierta cantidad de dinero en pago de dicha cuota, dicha partición no es nula por tratarse de un error de derecho, ni ese pago es de tal naturaleza que pueda exigirse la restitución de lo pagado como excepción a la regla general anteriormente expresada.

ID.—TRANSACCIÓN EN UNA PARTICIÓN DE HERENCIA—ERROR DE DERECHO.—Cuando las partes en un documento de partición de herencia también celebran un contrato de transacción, ésta no puede declararse nula por error de derecho sufrido por las partes.

INCONGRUENCIA ENTRE LA PRUEBA Y LA DEMANDA—PARTICIÓN DE HERENCIA—TRANSACCIÓN.—La prueba debe estar de acuerdo con la teoría planteada por las alegaciones de la demanda, y cuando en ésta sólo se pide la nulidad de la declaratoria de herederos y partición de herencia existe una incongruencia entre la prueba y la demanda cuando de aquella resulta que se trata de un contrato de transacción.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José E. Benedicto.*

Abogado del apelado: *Sr. José Martínez Dávila.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Se alega en la demanda presentada en este caso que el demandante José Arandes en unión de su hermano Francisco Arandes y los hijos de su otra hermana difunta Amalia Arandes Virella, fueron declarados herederos de su madre Clara Virella por la Corte de Distrito de San Juan.

Que en 18 de febrero de 1909, Estebanía Báez obtuvo una declaratoria de herederos de los bienes de su esposo Ramón Arandes en favor de su madre Clara Virella, y de la peticionaria, o sea dicha Estebanía Báez, como viuda en la cuota usufructuaria.

Que en la misma fecha José Arandes, demandante en esta acción, obtuvo la declaración de incapacidad de su madre de quien se le nombró tutor, pero alegó que no intervino como tutor de la misma en la declaratoria de herederos.

Que en 28 de mayo de dicho año la Corte de Distrito de San Juan aprobó la partición de bienes dejados por Ramón Arandes Virella, practicada ante el notario Julio César González en primero de abril del mismo año y en la que se adjudicó a Estebanía Báez la suma de $2,500, de acuerdo con el derecho que aparecía de la declaratoria de herederos, habiendo recibido la mencionada Estebanía Báez dicha suma en pago.

Que dicho Ramón Arandes falleció en el año 1909.

Y se suplicó a la corte que anulara la declaratoria de herederos y la partición y se devolviera al demandante como herederos de dicha Clara Virella la tercera parte en la suma que indebidamente se adjudicó a Estebanía Báez, con las costas.

En la contestación se admitieron algunos de los hechos contenidos en la demanda pero se alegó que la corte había intervenido en todos los actos y contratos necesarios y que el demandante como tutor de su madre había aceptado la declaratoria de herederos, habiendo procedido los interesados de común acuerdo sin que mediara fraude o engaño; que la demandada en 1910 renunció su derecho a su cuota usu-

fructuaria en la testamentaría de Ramón Arandes a favor
de Clara Virella, representada en dicho acto por su tutor
José Arandes, que es el demandante en este caso.

Apareció del juicio que José Arandes intervino y prestó
su consentimiento en todos los procedimientos necesarios
como tutor de su madre; que la corte dictó sentencia en fe-
brero 18, 1910, aprobando la declaratoria de herederos; que
hubo una partición de bienes por escritura No. 145 otorgada
ante el notario Julio César González en 1 de abril de 1910,
en la cual se adjudicó a la viuda Estebanía Báez de acuerdo
con la resolución de la corte de febrero 18, 1910, la suma de
$4,292, por cuota usufructuaria como viuda, y que dicha es-
critura fué aprobada por la corte en 28 de mayo de 1910; que
en 1 de abril 1910, y por escritura No. 29, ante el notario
Julio César González, en la que se hace referencia al docu-
mento No. 145, dicha Estebanía Báez renunció el expresado
usufructo adquiriendo en pago de dicha renuncia la suma
de $2,500. La corte dictó sentencia a favor del demandante
por la suma de $833.33.

Alega la apelante que la suma que se le pagó fué debido
a un error de la ley y no puede ser devuelta.

La corte en su opinión se fundó únicamente en el artículo
1048 del Código Civil, el cual es como sigue:

"Artículo 1048.—La partición hecha con uno a quien se creyó
heredero sin serlo, será nula,"

y cita la corte los comentarios de Manresa respecto a su equi-
valente el artículo 1081 del Código Civil Español, a saber:

"Puede presentarse la cuestión de este artículo bajo los siguien-
tes aspectos:

"1. El heredero único parte la herencia con otro que no es here-
dero, creyendo que lo era.

"2. Los herederos verdaderos son varios, y todos han intervenido
en la partición; pero además se ha dado participación a un extraño
que no tenía derecho a la herencia, como heredero.

"3. A uno de los herederos verdaderos ha sustituído en la par-
tición por error, otra persona que no lo era.

"¿A cual de estos casos se refiere el artículo 1081? La partición se declara por el legislador nula, siempre que se practique con uno a quien se creyó heredero sin serlo. No distinguiendo la ley, habrá de estimarse aplicable a los tres citados casos; pero como pueden ser distintas las circunstancias, en cada uno de ellos será necesario apreciar éstas para determinar los efectos de la nulidad.

"Caso 1.—El heredero real es uno; pero creyendo que otra persona lo es también, parte con él la herencia. Aquí no cabe más solución que la del artículo 1081; la partición es nula radicalmente. Pero como no cabe partición cuando el heredero es único, la declaración de nulidad producirá el efecto de que se entreguen todos los bienes al heredero único, sin necesidad de nueva partición."

7 Manresa, p. 748.

Pero creemos que el ilustrado comentarista tuvo presente un error de hecho y no de derecho. La referencia que él hace a un "extraño," difícilmente puede referirse a una viuda o pariente que como tal viuda o pariente era bien conocida pero que debido a la interpretación que se dió a la ley se resolvió que no tenía participación alguna en la herencia, como sucedió cuando este tribunal revocó el caso de *Julbe v. Guzmán,* 16 D. P. R., 530, en el cual se resolvió que el viudo no tenía derecho a cuota usufructuaria alguna en la sucesión intestada. Se ve además que Manresa no tuvo en cuenta un error de derecho por sus comentarios sobre el artículo 1895 del Código Civil Español, que es equivalente al 1796 de nuestro código. Dice lo siguiente:

"Aunque el artículo (1895 equivalente al 1796 de nuestro código) no determina qué clase de error ha de concurrir en el pago, desde luego se comprende que éste ha de ser de hecho, porque el de derecho no aprovecha a nadie, y no puede, por tanto, originar dicho cuasi-contrato."

Los artículos 1232, 1233 y 1718 de nuestro propio código, hablan entre otras cosas, del "error" que invalida a un contrato o transacción, y con respecto a esto punto dice Manresa en el tomo 8 de sus Comentarios, página 611, lo siguiente:

"Respecto a esta última distinción (error de hecho y de derecho) la más fundamental, diremos antes de pasar más adelante, que por

lo general, el error a que este artículo (1266 Código Español) se re-
fiere, el que constituye vicio del consentimiento, es el de hecho, no
es el de derecho, ni siquiera cuando precisamente versa el contrato
(la transacción) sobre aquellos de que se creen asistidas las partes.
En este sentido, la jurisprudencia declara, en sentencia de 12 de
febrero de 1898 que 'el error que vicia los contratos y las transac-
ciones en su caso, por falta de consentimiento, con arreglo a los artí-
culos 1261, 1265, 1266 y 1817 (1228–1232–1233 y 1718 de nuestro
código) ha de recaer sobre la sustancia de la cosa objeto del contrato,
y no sobre el derecho que asista a las partes, principalmente cuando
la diferencia de apreciación sobre este derecho es lo que da lugar
al contrato.' ''

Modesto Falcón al considerar esta cuestión se expresa en
el tomo 4 de su obra de Derecho Civil Español, página 87,
como sigue:

"Los jurisconsultos romanos distinguieron dos clases de error; el
de hecho y el de derecho. El de hecho, según aquella legislación,
producía la nulidad de la obligación. El de derecho no tenía un
efecto constante y uniforme; a veces aprovechaba al que lo sufría
y a veces le perjudicaba.

"Los códigos modernos no han vacilado. Todos de común acuerdo
declaran que el error de derecho a nadie aprovecha. La obligación
contraída con error de derecho es una obligación válida y eficaz;
porque todos tienen la obligación de conocer el derecho.''

Iguales razonamientos aparecen expresados en el Diccio-
nario de Escriche y en el tomo 1 de los Comentarios al Código
Civil por Scaevola, página 111, a saber:

"No puede alegarse en juicio la ignorancia de las leyes promul-
gadas.''

Ahora bien, aunque el artículo 1048 expresa de modo ter-
minante que la partición hecha con uno a quien se creyó here-
dero sin serlo, será nula, creemos, sin embargo, que dicho
artículo se refiere al caso en que no es heredero la persona
que se dice serlo por falta del hecho o condición que le da
tal carácter. Semejante caso surgiría si un hombre dijera

que era pariente de una persona fallecida sin tener consanguinidad alguna con la misma o si la persona no era en realidad la viuda del fallecido La forma misma en que está redactado el artículo parece indicar un error de hecho. Difícilmente hablaría el legislador de una interpretación errónea de la ley pues se presume que todo el mundo la conoce.

La apelante también alega que nuestra ley estatutaria nada dice respecto a lo que ha de hacerse en un caso como el presente y que debe recurrirse a los principios generales del derecho, como lo determina el artículo 7 del Código Civil. También hemos consultado la jurisprudencia americana e inglesa en cuanto al particular y encontrado que se ha hecho un estudio acabado sobre la materia en el caso de *Scott* v. *Ford,* 68 L. R. A., página 469, del cual extractaremos la parte más pertinente, a saber:

"La cuestión envuelta es muy antigua y ha dado origen a gran discusión si bien la tendencia de las modernas autoridades se muestra firmemente en un sólo sentido y en favor de la teoría de que un error de derecho, dentro de las debidas restricciones, no puede servir de excusa y no puede ser recuperado el dinero pagado debido a tal error. En esta cuestión están comprendidas las dos máximas legales que siguen: *Ignorantia facti excusat, ignorantia juris non excusat,* (la ignorancia de un hecho puede servir de excusa pero la ignorancia de la ley no puede excusar); y *volenti non fit injuria* (aquello en que ha consentido una persona no puede legalmente considerarse como un daño). Maximas Legales de Broom, 8ª. Edición, págs. 253, 268. (En cuanto a esta última dice el Sr. Broom (272): "Hay también un gran número de casos en los cuales se ha resuelto que el dinero que ha sido satisfecho voluntariamente no puede ser devuelto a quien lo pagó aun cuando no fuera necesario hacer el pago original por no mediar una justa causa; y estos casos están íntimamente relacionados en principio con aquellos que han sido considerados al tratarse de un pago hecho por ignorancia de la ley." Por tanto, pondremos nuestra atención más directamente en la interpretación que según la ley se da generalmente a dicha máxima. También es innegable que 'se presume que toda persona conoce la ley' de lo cual no es sino una consecuencia 'que la ignorancia de la ley no excusa de su cumplimiento.' De estos principios en unión del que se refiere a la ignorancia de un hecho, infiere el Sr. Broom las dos proposiciones

siguientes: 'Primero, que el dinero pagado con completo conocimiento de los hechos pero mediando ignorancia de la ley no puede ser recuperado sino existe algún escrúpulo en su retención; y en segundo lugar, que el dinero satisfecho por ignorancia de los hechos puede ser recobrado siempre que no haya habido negligencia por parte de la persona que lo satisface y que en conciencia no había motivo para reclamarle,   *   *   *'

"El caso de *Brisbane* v. *Dacres,* 5 Taunt., 144, es uno de los primeros casos que tratan sobre la cuestión, el cual ha sido considerado del modo más cuidadoso y con la mayor erudición. El caso fué el siguiente: El capitán de un barco de Inglaterra trajo en dicho barco a su país fondos públicos para el servicio público, y fondos de individuos particulares para su propio beneficio. Recibió flete por ambos y pagó la tercera parte del mismo según la costumbre establecida en la marina al almirante bajo cuyas órdenes él había salido. Al saber, sin embargo, que la ley no obligaba a los capitanes a pagar a los almirantes la tercera parte del flete, estableció una acción por dinero obtenido y recibido para que le fuera devuelto por la albacea testamentaria del almirante habiéndose resuelto que no tenía él derecho a la devolución del dinero relacionado con el flete del gobierno. El Juez Sr. Gibbs después de exponer los hechos emplea este expresivo e inequívico lenguaje: 'Debemos considerar que este pago se verificó a virtud de una petición legal, y creo que cuando un hombre exige a otro el pago de una suma de dinero como cuestión de derecho y éste otro con entero conocimiento de los hechos en que se funda la petición ha pagado una suma, jamás podrá recobrar la suma que voluntariamente pagó. Puede ser que al volver a considerar la cuestión forme otro criterio de la ley y que el segundo sea el correcto. Si resolviéramos esta cuestión de otro modo surgirían muchos inconvenientes. Hay muchas cuestiones de ley que son dudosas. Al surgir éstas el demandado puede optar entre discutir el asunto o aceptar la demanda y pagar el dinero. Creo que por el hecho de someterse a la demanda aquél que paga el dinero lo entrega a la persona a quien se lo paga quien lo hace suyo, quedando terminada la operación entre ambos. El que lo recibe tiene derecho a considerarlo como suyo sin discusión alguna. Lo gasta en la confianza de que le pertenece, y sería muy injusto y perjudicial que el que ha reconocido el derecho verificando el pago voluntariamente, estuviera libre para en cualquier momento comprendido en el término de prescripción suscitar la cuestión y obtener la devolución del dinero. No se encuentra en las mismas condiciones el que lo recibe. Lo ha gastado en la confianza de que era suyo y quizás no tenga medios de devolverlo.' "

"El caso principal en este país con respecto al otro aspecto de la cuestión es quizás el de *Clarke* v. *Dutcher*, 9 Cow., 674; la corte, por medio del juez Sr. Sutherland expresa que 'si bien existen algunas pocas opiniones de jueces eminentes en sentido contrario, considero que según el criterio general de las autoridades queda establecido claramente el principio de que cuando se paga dinero con completo conocimiento de todos los hechos y circunstancias en los cuales se funda el requerimiento de pago, o teniendo los medios para tal conocimiento, no puede exigirse su devolución por la razón de que la parte creía que de acuerdo con la ley estaba obligado a pagarlo cuando en realidad no lo estaba. No le será permitido alegar que desconocía la ley, y se considerará que el pago se ha hecho voluntariamente.' Otro caso es el de *Mowatt* v. *Wright*, 1 Wend., 355, 19 Am. Dec., 508, en el cual se dice: 'Por lo general procede la acción por dinero obtenido y recibido cuando *ex aequo et bono* debe devolverlo el demandado, como sucede cuando se paga por equivocación o fundado en una causa que no existe, o si se ha obtenido por engaño, extorsión u opresión, o aprovechándose de un modo ilegal de la situación del demandante. 2 Burr, 1012. El error que da derecho a una parte para ejercitar esta acción deberá ser de hecho: Cuando no existe en realidad fraude u error si la ley estaba equivocada es aplicable la regla *ignorantia juris non excusat,* o sea, que la ignorancia de la ley no excusa de su cumplimiento. 2 Dougl., 471. El error de hecho tiene lugar o cuando algún hecho que realmente existe es desconocido o se supone la existencia de algún hecho que en realidad no existe. Un caso más reciente es el de *Champlin* v. *Laytin,* 18 Wend., 407; 31 Am. Dec., 382, en el cual se resolvió que el mero error de derecho no es suficiente para ser reparado en equidad a menos que haya habido fraude, sorpresa o influencia indebida. El juez Sr. Bronson sostiene en el curso de su opinión que 'existe diversidad de criterio entre los civilistas con respecto a si puede exigirse la devolución del dinero que ha sido pagado por un error en cuanto a la ley. Pero la doctrina establecida en Westminster Hall es que cuando se paga dinero teniendo entero conocimiento de los hechos no podrá exigirse su devolución por el fundamento de que la persona que lo pagó no conocía la ley.' *Hurd* v. *Hall.*, 12 Wis., 125, es un caso que ha sido bien considerado por el Juez Presidente Sr. Dixon, en el cual se define el error de ley en la forma siguiente: 'Tiene lugar el error de ley cuando una persona teniendo completo conocimiento de los hechos establece una conclusión errónea respecto al efecto legal de los mismos. Es una opinión o deducción errónea que surge de la interpretación imperfecta o indebida acerca de los hechos tal como

existen; así como una opinión formada sobre el concepto y alcance de la ley, presupone necesariamente que la persona que la forma conoce todos los hechos.' "

Véanse también los casos de *Elliot* v. *Swartout,* 10 Pet., 137; *Upton, Assignee,* v. *Triblecock,* 91 U. S., 50; *Allen* v. *Galloway,* 30 Fed., 466; *Storrs* v. *Baker,* 10 A. D., 316, y notas.

Se observará que en la resolución del caso de *Scott* v. *Ford,* arriba citado un ilustrado juez expresa que existe diversidad de criterio entre los civilistas con respecto a si existe algún remedio en los casos en que el error es de derecho, pero Modesto Falcón como también Manresa muestran en las anteriores citas que la ley es muy parecida tanto en la jurisprudencia inglesa como en la española.

Según se indica también en el caso de *Scott* v. *Ford* que ya ha sido citado, hay cortes que sostienen que puede obtenerse la devolución del dinero cuando el pago se ha hecho voluntariamente por un error de ley. Aunque entendemos que el artículo 1048 hace referencia al error de hecho, no vemos que sea necesario resolver en este caso en términos generales si puede o no exigirse alguna vez la devolución del dinero que ha sido satisfecho voluntariamente por un error de derecho. Pero sí sostenemos en todo caso que el error debe ser tal que la persona que lo recibe quede obligada en justicia y en buenos principios de conciencia a devolverlo según se expresa por esas autoridades. Hasta la fecha en que se resolvió el caso de *Julbe* v. *Guzmán* a que se ha hecho referencia, la opinión general que aquí existía en los tribunales y abogados era la de que la viuda tenía derecho a su cuota usufructuaria en la herencia de su esposo. El dinero fué satisfecho en esa creencia. Puede ser que hasta el marido haya fallecido en esa suposición. De acuerdo con las autoridades no vemos en este caso ningún principio de justicia por virtud del cual pueda este tribunal ordenar la devolución de la cantidad recibida, aun cuando a veces pudiera exigirse la devolución del pago que se ha hecho voluntariamente por un error de derecho.

Pero existe otro aspecto en este caso concreto. Después que se hizo la partición y se vió que la viuda tenía derecho a la suma de $4,292, las partes firmaron otra escritura por virtud de la cual la viuda renunció a su cuota usufructuaria y recibió la cantidad de $2,500, en lugar de la primera. Este fué un convenio de transacción estando comprendida su nulidad o anulación en el artículo 1718 del Código Civil. Manresa establece de modo claro en la segunda cita a que se ha hecho referencia que el error que invalida una transacción deberá ser de hecho.

Además, en este caso la prueba no es congruente con las alegaciones. El demandante solicita la nulidad de la declaratoria de herederos y de la partición y en cambio de la prueba aparece que medió un convenio de transacción. Esto constituye un "variance."

Debe revocarse la sentencia.

*Revocada la sentencia apelada.*

Juez concurrente: Sr. del Toro.

Los Jueces Sres. Presidente Hernández y Asociados Aldrey firmaron, haciendo constar estar conforme con la sentencia por las razones consignadas en la opinión concurrente.

OPINION CONCURRENTE DEL JUEZ PRESIDENTE SR. HERNÁNDEZ Y ASOCIADO SR. ALDREY.

Por resolución judicial de 18 de febrero de 1909 fueron declaradas herederas abintestato de Ramón Arandes, su madre Clara Virella y también su viuda Estebanía Báez en una cuota usufructuaria. Posteriormente madre y viuda hicieron la partición de los bienes de la herencia.

En la demanda que originó el presente pleito, se pide la nulidad tanto de la declaratoria de herederos como de la partición de bienes, alegándose que la viuda no tenía derecho a cuota usufructuaria en concurrencia con ascendiente y que la partición de bienes se hizo por tanto con una persona que erróneamente fué considerada heredera usufructuaria.

La corte inferior sostuvo las peticiones de la demanda en la sentencia apelada.

Nosotros opinamos que el demandante carece de causa de acción por cuanto la viuda Estebanía Báez tenía derecho a cuota usufructuaria en el abintestato de su esposo Ramón Arandes, y para sostener nuestra opinión invocamos las mismas razones consignadas en el voto disidente emitido al decidir esta Corte Suprema en sentido contrario por mayoría de votos, con fecha 15 de junio de 1910, el caso de *Julbe* v. *Guzmán*, 16 D. P. R., 530–546.

Pero en la hipótesis de que a Estebanía Báez no pudiera reconocérsele derecho hereditario alguno en el abintestato de Ramón Arandes, y de que no fuera heredera usufructuaria del mismo, estimamos que, atendidas las circunstancias especiales del presente caso, no podía ser obligada a la devolución de lo percibido en concepto de cuota usufructuaria. Bajo la anterior hipótesis estamos conformes con los razonamientos que sirven de base a la opinión que acompaña la sentencia pronunciada por esta corte en el día de hoy.

Tenga o no derecho Estebanía Báez a cuota usufructuaria en el abintestato de su esposo Ramón Arandes, procede la revocación de la sentencia apelada.