ELVIRA JUANA MANUELA JOAQUINA GARCÍA FERNÁNDEZ, peticionaria y apelada, EX PARTE. JOSEFA AGUAYO CASALS, interventora y apelante.

No. 5812.—*Sometido:* Noviembre 28, 1932. *Resuelto:* Diciembre 21, 1932.

* NOTA: Véase el prefacio.

*Tous Soto & Zapater,* abogados de la apelante; *Guerra-Mondragón & Soldevila,* abogados de la apelada.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Este caso quedó sometido por sus méritos el 17 de junio último. La parte apelada además de discutir en su alegato el recurso en su fondo, solicitó su desestimación por falta de una exposición del caso debidamente autenticada. Estudiada esa cuestión previa, fué resuelta en favor de la apelada, desestimándose en su consecuencia el recurso. 44 D.P.R. 1.

La parte apelante pidió la reconsideración de la decisión de esta corte y la reinstalación del recurso, acompañando a su moción una certificación creditiva de la aprobación de la exposición del caso por el juez sentenciador.

Se señaló la audiencia del 28 de noviembre último para oír a las partes sobre la moción y ambas comparecieron y fueron oídas en efecto, quedando aclarado que de accederse a la reconsideración se entraría a decidir el caso en su fondo sin necesidad de nueva vista.

Dos son los fundamentos que tiene la apelante para pedir la reconsideración, primero que la exposición del caso que se hizo formar parte de la transcripción era innecesaria por constar de las propias alegaciones la certeza de los hechos

que sirvieron de base a la sentencia apelada, y segundo que en todo caso la certificación que acompaña cura el defecto advertido que sirvió de base a la desestimación.

Quizá tenga razón la parte apelante en su primer fundamento. No creemos que sea necesario resolverlo. A virtud de la certificación no hay duda alguna ahora de la autenticidad de la exposición. Y como no se trata de algo nuevo, sino de la confirmación de lo que ya aparecía en los autos tomado de las minutas de la corte, la dilación en corregirlo no debe impedir el ejercicio de la discreción de esta corte para admitir como admite la corrección *nunc pro tunc*. Debe, pues, dejarse sin efecto la resolución de 9 de noviembre último desestimando el recurso. Dejada sin efecto, procederemos a resolver la apelación en su fondo.

■■ De los autos resulta que Juan García Villarraza, domiciliado y con bienes raíces en Ponce, Puerto Rico, falleció en abril de 1899, en Pará, Brasil, en cuya ciudad se encontraba accidentalmente.

El Sr. Villarraza estuvo casado primeramente con doña Manuela Fernández y de ese matrimonio quedó y vive una hija, Elvira. Muerta doña Manuela, casó con doña Josefa Aguayo y de su matrimonio quedó y vive otra hija, Graciela. Elvira pidió a la Corte de Distrito de Ponce que la declarara heredera de su padre en unión de su otra hermana Graciela. En el expediente intervino la viuda doña Josefa y pidió que se le declarara heredera como tal en la cuota en usufructo que la ley determina. Oyó a todos la corte y, con vista de las alegaciones y las pruebas, y de la ley y la jurisprudencia de esta corte sobre el particular, declaró únicas y universales herederas del padre a las hijas, desestimando la solicitud de la viuda, quien, no conforme, interpuso el presente recurso de apelación.

La exacta cuestión en controversia fué resuelta por esta Corte Suprema en el caso de *Julbe* v. *Guzmán,* 16 D.P.R. 530. En dicho caso después de exponer los hechos y antecedentes legales, de transcribir los artículos pertinentes del

Código Civil sobre la sucesión testada y la intestada y de examinar las opiniones divididas de los comentaristas y la jurisprudencia, se dijo:

"En nuestra ley, según se encuentra hoy, éste es un *cassus omissus*. La legislatura tenía facultad para determinar quiénes debían ser herederos y quiénes sucederían en casos en que no existiera disposición testamentaria. Las palabras usadas son claras y por incompatibles que parezcan ser, no incumbe a la corte substituir su voluntad por aquella de la legislatura. Sería tan razonable considerar a la sucesión intestada como expresiva de la verdadera intención de la legislatura y determinar los derechos de los herederos forzosos por las disposiciones que se refieran a la sucesión intestada. Las 'Siete Partidas' limitaron la porción de la viuda a la suma que dicha ley consideró necesaria para su subsistencia. La Legislatura de Puerto Rico puede haber creído que los derechos de los parientes más cercanos de una mujer de quienes la misma adquirió sus bienes, debían preferirse a los parientes del marido quien se presume que vive de sus propios recursos. Declarar otra cosa en el caso que está sometido a nuestra consideración, sería intervenir injustificadamente con los claros y expresos derechos de un padre (*parent*)."

Fué en verdad un caso muy debatido en el seno del tribunal. La opinión de los jueces se mantuvo dividida, formando la mayoría los Jueces Asociados Sres. McLeary, Wolf y del Toro, y la minoría los Jueces Presidente Sr. Hernández y Asociado Sr. Figueras.

La decisión en el caso de Julbe, *supra,* se dictó en 1910. Cerca de cuatro años más tarde, en 1914, se citó y aplicó en el de *Arandes* v. *Báez,* 20 D.P.R. 388, quedando establecida la siguiente doctrina:

"Cuando de acuerdo con la opinión que ha prevalecido de que la viuda tiene derecho a una cuota usufructuaria en la sucesión intestada hasta que se sentó la doctrina contraria en el caso de Julbe v. Guzmán, 16 D.P.R. 530, se hace una partición de herencia en la cual se le adjudica a la viuda cierta cantidad de dinero en pago de dicha cuota, dicha partición no es nula por tratarse de un error de derecho, ni ese pago es de tal naturaleza que pueda exigirse la restitución de lo pagado como excepción a la regla general anteriormente expresada."

La opinión de la corte fué emitida por el Juez Asociado Sr. Wolf con la conformidad del Juez Asociado Sr. del Toro. El Juez Presidente Sr. Hernández y el Juez Asociado Sr. Aldrey estuvieron conformes con la sentencia por las razones que expusieron en una opinión concurrente.

Once años después, en el de *Cádiz* v. *Jiménez,* 30 D.P.R. 34, 38, en la opinión unánime de la corte, se dijo:

"Se sostiene por la parte apelante que dentro de la palabra 'hijos' no puede comprenderse al hijo natural reconocido. Este caso no es enteramente igual al de Díaz v. Porto Rico Railway, Light and Power Company, 21 D.P.R. 78, pero aceptando, sin resolverlo, que así fuera, entonces nos encontraríamos frente a un caso en que necesariamente tendría que concluirse que el valor de la póliza correspondía a los herederos del finado y aquí el único heredero del finado lo era, según declaración expresa de la Corte, hecha en el procedimiento adecuado, el hijo natural reconocido. El Sr. Cádiz murió el 2 de julio de 1908 sin otorgar testamento. La viuda en tal virtud no tenía el carácter de heredera. Véase el caso de Julbe v. Guzmán, 16 D.P.R. 530."

Con su habilidad reconocida ataca el distinguido abogado de la parte apelante en este caso los fundamentos de la opinión en el de Julbe, *supra.*

Del estudio sobre Jeremiah Sullivan Black, Juez Presidente de la Corte Suprema de Pennsylvania, que aparece en el volumen VI de la obra "Great American Lawyers" editada por William Draper Lewis, páginas 13 y siguiente, transcribimos:

"Era uno de esos jueces que mantuvieron vigorosamente la doctrina de *stare decisis.* Así, hallamos en uno de los primeros casos (McAllister vs. Samuel, 17 Pennsylvania State Reports 114) que ante él llegaron como juez presidente, lo que sigue:

" 'Una vez que una cuestión ha sido deliberadamente resuelta luego de argumentos solemnes, no debe ser variada, a menos que sea tan manifiestamente errónea que no pueda sostenerse sin violentar la razón y la justicia.

" 'Así lo afirma, no una corriente, sino un torrente de autoridades. Ningún juez que sienta el debido respeto hacia el principio de *stare decisis*—ese gran principio que es el áncora de salvación de

nuestra jurisprudencia—puede negar que está inamoviblemente establecido.'

"Poco después (McDowell vs. Oyer, 21 Pennsylvania State Reports 417, 423) habló aun con mayor énfasis sobre este punto, cuando expresó:

"'Por supuesto, no estoy diciendo que debamos consagrar los meros errores de los que nos precedieron, y tropezar cada vez que lleguemos al sitio donde ellos tropezaron. Un error palpable, que viole la justicia, la razón y el derecho, debe corregirse, no importa quién lo haya cometido. Hay casos en nuestros libros que tienen tales muestras de festinación y descuido, que exigen reconsideración. Hay algunos de que es necesario prescindir, porque no pueden reconciliarse con otros. Hay viejas decisiones cuya autoridad ha venido a ser anticuada, a causa de un cambio total en las circunstancias del país, y del progreso en la opinión. *Tempora mutantur.* Variamos con el cambio del tiempo, tan necesariamente como nos movemos con el movimiento de la tierra. Pero en casos ordinarios, sobreponer nuestras meras nociones a los principios por que el país se ha regido como sentados y establecidos, es convertirnos no en ministros y agentes de la ley, sino en los amos del Derecho y en los tiranos del pueblo'."

Como anteriormente indicamos, el caso de Julbe, *supra,* fué decidido tras un estudio intenso en el seno del tribunal. La cuestión fué debidamente argumentada y examinada desde todos sus ángulos, interviniendo los abogados Juan Vías Ochoteco y M. Tous Soto por la parte apelante y Eugenio Benítez Castaño por la parte apelada, y no vemos justificación alguna para alterar su decisión después de haber estado en vigor por más de veinte años.

Pero la apelante al parecer sostiene que sin revocar el caso de Julbe, *supra,* puede decidirse en su favor este caso por diferenciarse de aquél en que aquí se trata de la herencia de un súbdito español y debe aplicarse la ley española tal como ha sido interpretada por los tribunales de España.

No consta de los autos la ciudadanía ni el día de abril de 1899 en que falleció el Sr. Villarraza, como sugiere la parte apelada, pero admitiendo, sin resolverlo, que tuviera razón la apelante al sostener que debiera regularse este caso

por los preceptos del viejo Código Civil Español con la interpretación dádale en España, creemos que dista mucho de haberse demostrado que esa interpretación sea enteramente uniforme en contra del criterio sustentado por esta Corte Suprema en el repetido caso de *Julbe* v. *Guzmán.*

En la opinión en el caso de Julbe se hace referencia a la diversidad de opiniones existente entre los grandes comentaristas españoles sobre el punto en discusión. No alargaremos innecesariamente este dictamen reproduciendo las de Scaevola y Morell que sostienen la decisión de esta corte.

Cita la apelante en apoyo de su contención la sentencia del Tribunal Supremo de España de 8 de febrero de 1892 y la resolución de la Dirección General de los Registros de España de 14 de junio de 1897.

Es cierto que la primera, que aparece reportada en 71 Jurisprudencia Civil 133, contiene un *considerando* favorable a la contención de la apelante, que dice:

"Considerando que tampoco es de estimar el motivo tercero, porque el viudo es coheredero con los demás que con este carácter concurran a la herencia, desde el momento en que la ley le señala una parte alícuota en los bienes del cónyuge premuerto, y viene a suceder a éste con o sin su voluntad, aparte de que el art. 807 del mismo Código clara y expresamente llama al viudo o viuda herederos forzosos; y teniendo, como tiene, el recurrente D. Eusebio da Guarda la condición de coheredero, es evidente que se halla incluso en la prohibición establecida en el art. 1057 del mismo Código para ser partidor de la herencia de su difunta esposa."

Pero si se examina el caso en su totalidad se verá que no se trata de uno de sucesión intestada sino testada, en el que el Tribunal Supremo de España confirmó el auto de la Audiencia Territorial de Coruña por virtud del cual revocando el del juzgado de dicha ciudad la Audiencia declaró que había lugar a la promoción del juicio voluntario de testamentaría.

En el tercer motivo del recurso de casación interpuesto se alegó que la Audiencia al considerar al viudo recurrente

como coheredero de los hijos habidos por su difunta esposa en su primer matrimonio y por lo tanto incluso en la prohibición establecida en el artículo 1057 del Código Civil, había infringido los artículos 807 y 834 de dicho Código por la manera impropia que tuvo de entenderlos y aplicarlos "pues declarando el artículo 807 que son herederos forzosos, en primer término, los hijos y descendientes legítimos respecto de sus padres y ascendientes legítimos, es evidente que el viudo no puede ser considerado como coheredero de éstos, ni aun siquiera con la mayor impropiedad es lícito darle semejante nombre, porque al fin y al cabo, estando excluído de ese carácter por quien tiene mejor derecho, no le corresponde otra cosa que lo que se le designa en el artículo 834, incluído en sección distinta de la dedicada a tratar de las legítimas, bajo el epígrafe 'Derechos del cónyuge viudo'; en cuyo artículo se dispone que el viudo o viuda que al morir su consorte no se hallase divorciado o lo estuviere por culpa del cónyuge difunto, tendrá derecho a una cuota en usufructo igual a la que por legítima correspondía a cada uno de sus hijos o descendientes legítimos no mejorados; viéndose, por tanto, en este artículo colocada la cuota enfrente de la legítima como cosa diversa, ya que no contraria, pues la una implica el carácter de heredero en quien la recibe, y la otra sólo corresponde a un derecho singular y personalísimo, que dista infinito de la sucesión."

Y a la infracción alegada respondió el Supremo con el *considerando* que dejamos transcrito.

Lo que verdaderamente estaba en controversia en el caso era si el viudo D. Eusebio da Guarda estaba incurso en la prohibición del artículo 1057 a saber: "el testador podrá encomendar por acto *inter vivos* o *mortis causa* para después de su muerte la simple facultad de hacer la partición a cualquiera persona que no sea uno de los coherederos", por virtud de ser un coheredero con los hijos del primer matrimonio de su esposa doña Modesta de Goicuría y Cabrera,

en la herencia testada de la misma. Y el Supremo resolvió que lo estaba.

Como puede verse, la cuestión de si el viudo era heredero en un caso de herencia intestada no estaba ante la corte y siendo ello así la manifestación que contiene el *considerando* de la sentencia del Supremo "y viene a suceder a éste con o sin su voluntad", no tiene fuerza decisiva como jurisprudencia consciente y firmemente establecida en el sentido de que el viudo es también heredero en los casos de herencia intestada.

La resolución de la Dirección General de los Registros de España que se cita es muy interesante y pone de manifiesto el verdadero estado de la cuestión en España en el momento en que se dictó, año de 1897. Habla por sí misma. Por todo comentario nos limitaremos a subrayar aquella parte del razonamiento a que deseamos dar mayor énfasis.

He aquí los *considerandos* de la resolución que parece oportuno transcribir:

"Considerando que la *práctica jurídica, partiendo del supuesto* de que la intención del legislador fué la de dar también al viudo una porción alícuota forzosa en la herencia intestada del premuerto, cuando éste deja descendientes, *ha tratado de llenar la supuesta emisión de la legislación,* aplicando *unas veces* los preceptos del Código, que atribuyen al viudo una parte alícuota en concepto de legítima, *y pretendiendo otras* que se amplíe la disposición contenida en el art. 932, en el sentido de equiparar al supérstite con los hijos, de tal suerte que aquél perciba en usufructo una parte igual a la que éstos adquieren en propiedad.

"*Considerando que no teniendo hasta ahora dicha práctica y las dos distintas soluciones adoptadas por la misma para suplir, o más bien corregir, las deficiencias del Código en materia de sucesión intestada de los descendientes, otro carácter que el de meras opiniones jurídicas, individuales o privadas, ninguna de ellas puede revestir la autoridad de una regla o doctrina legal de observancia general obligatoria,* y, por consiguiente, no pueden tampoco aplicarse a los actos ejecutados, con arreglo a las disposiciones que respectivamente pretenden hacer prevalecer, la sanción de nulidad establecida en el art. 4º del mencionado Código."

Siendo ello así, se concluye que el caso omiso que, al ser invocado. a tiempo como aquí sucede, reconoció con todas sus consecuencias esta Corte Suprema de Puerto Rico en *Julbe* v. *Guzmán, supra,* también se advirtió en España, sin que ni la práctica ni las dos distintas soluciones adoptadas por la misma para corregir las deficiencias del Código, pudiera reconocerse que revestían la autoridad de una regla o doctrina legal obligatoria. Y esto se sostuvo por la Dirección General de los Registros cinco años después de haberse dictado la sentencia del Tribunal Supremo que invoca la apelante.

Además, parece oportuno citar lo que sigue de la decisión de la Corte de Circuito de Apelaciones del Primer Circuito, en el caso de *Villar & Co. Inc.* v. *Conde,* 30 F. (2d) 588. Es así:

"La demandante, Villar & Co., Inc., sostiene que la disposición del Código Civil de Puerto Rico que trata de esta cuestión, y que corresponde al artículo 1101 del Código Civil Español es el artículo 1068 (Estatutos Revisados de 1911, sec. 4164); que este artículo lee así: 'Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas'; que el Tribunal Supremo de España al interpretar este artículo del código español ha resuelto que en una acción basada en 'los daños y perjuicios de que responden los que violen sus obligaciones, no basta probar el quebrantamiento del contrato sino que es necesario también probar la existencia real y positiva de los daños, toda vez que éstos no siempre surgen ni siempre pueden ser apreciados'; y que debido a esto la mera prueba de la existencia del supuesto contrato y su quebrantamiento en el presente caso, no era suficiente, y que para que Conde tuviera derecho a daños substanciales era necesario que él demostrara cómo fué perjudicado y el importe ·de los daños y perjuicios sufridos. Pero es suficiente respuesta a esta contención el hecho de que la Corte Suprema en julio de 1915, casi catorce años ha, en en el caso de Hardouin v. Krajawsky-Pesant Co., 22 D.P.R. 689, al interpretar este artículo del código resolvió que 'La cuantía de los daños y perjuicios sufridos por incumplimiento, por parte del principal, de un contrato de arrendamiento de servicios, es, prima facie,

la remuneración estipulada en el contrato, pudiendo el demandado obtener que se rebaje dicha cuantía mediante prueba de la cantidad que el empleado hubiere ganado realmente o hubiera podido ganar durante el tiempo en que debió estar vigente el contrato'; que la interpretación de este artículo del código es materia de legislación local; y que esta corte no intervendrá con esa interpretación después de haber sido reconocida por espacio de catorce años y luego de haber sido reafirmada por dicho Tribunal Supremo. Ciertamente no está del todo equivocada.''

*Por virtud de lo expuesto, debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

* Los Jueces Asociados Señores Aldrey y Hutchison disintieron en cuanto a la ratificación de la doctrina del caso *Julbe v. Guzmán,* 16 D.P.R. 530.