SENTENCIA
El 14 de diciembre de 2010 el Tribunal de Apelaciones confirmó la sentencia del Tribunal de Primera Instancia que declaró “con lugar” la demanda sobre sentencia decla-ratoria, pago indebido de fondos públicos y cobro de dinero que presentó el Estado Libre Asociado de Puerto Rico (E.L.A.) contra el entonces alcalde de Rincón, Liborio R. Caro Muñiz, su esposa, la Sra. Sonia Rita Caro Caro y la Sociedad Legal de Gananciales que ambos componen (peticionarios). Insatisfechos con ese proceder, estos acuden ante nos para solicitar la revisión de la sentencia que emitió el Tribunal de Apelaciones. En esencia, aducen que el foro apelativo intermedio erró al confirmar la sentencia del Tribunal de Primera Instancia que ordenó el pago de $86,291.80 desembolsados por el municipio de Rincón. En su argumentación, los peticionarios nos requieren que apli-quemos a los hechos de este caso nuestro más reciente pre-cedente, E.L.A. v. Crespo Torres, 180 D.P.R. 776 (2011).
Evaluada la controversia, determinamos que el foro apelativo intermedio erró al confirmar la sentencia del Tribunal de Primera Instancia. Revocamos.
*266 I
El Sr. Liborio R. Caro Muñiz fungió como alcalde del municipio de Rincón de 1993 a 2000. Durante su incum-bencia, la Legislatura Municipal de ese municipio aprobó el 29 de abril de 1997 la Resolución Núm. 20, Serie 1996-97. Mediante esa resolución, se otorgó al señor Caro Muñiz un aumento de sueldo por $1,600 mensuales efectivo al 1 de julio de 1997. Con el aumento concedido, el sueldo del entonces alcalde incrementó de $2,400 a $4,000 men-suales.
Al igual que ocurrió en varios municipios, la concesión del aumento al señor Caro Muñiz se basó en la interpreta-ción inicial que hizo la Oficina del Comisionado de Asuntos Municipales (O.C.A.M) del recién aprobado Art. 3.012 de la Ley de Municipios Autónomos, Ley Núm. 81-1991, 21 L.RR.A. see. 4112. En esa interpretación, la O.C.A.M. in-formó que era innecesario que las asambleas municipales aprobaran un reglamento para regir su procedimiento, antes de conceder un aumento. A su vez, la O.C.A.M. razonó que no era obligatorio que las asambleas municipales eva-luaran los siete criterios contenidos en el artículo mencio-nado para conceder un aumento, pues su consideración re-caía en su sana discreción. Indicó que el único criterio necesario para evaluar el aumento salarial era su razonabilidad.
Sin embargo, meses después, la O.C.A.M. modificó su interpretación original del Art. 3.012, id. El 11 de junio de 2002, mediante el Memorando Circular Núm. 2002-11, la O.C.A.M. opinó que previo a la concesión de un aumento a un alcalde, debía aprobarse el reglamento que exige el Art. 3.012, id. De la misma forma, añadió que las legislaturas municipales debían evaluar, obligatoriamente, los siete cri-terios contenidos en el artículo antes de otorgar un au-mento salarial a un alcalde. La O.C.A.M. ratificó esa nueva interpretación en otro memorando circular.
*267 Durante todo ese proceso, las diferencias en interpreta-ción entre la O.C.A.M. y la Oficina del Contralor sobre el Art. 3.012, id., no se hicieron esperar. A raíz de ello, la Comisión Conjunta de la Cámara de Representantes sobre Informes Especiales del Contralor citó al Departamento de Justicia para que se expresara. Tras un análisis del artí-culo y de su historial legislativo, el Departamento de Jus-ticia concluyó que las legislaturas municipales debían eva-luar minuciosamente cada uno de los siete requisitos que enumera el Art. 3.012 de la Ley de Municipios Autónomos, id. No obstante, aclaró que, si bien era cierto que entre los requisitos se exigía que se analizaran los informes de au-ditoría de los municipios, ignorarlos no viciaba automáti-camente de nulidad los aumentos concedidos. Serían váli-dos siempre que se consideraran mecanismos alternos que demostraran la situación financiera real del municipio con suficientes garantías de confiabilidad.
Luego de recibir el informe de auditoría que realizara la Oficina del Contralor sobre las operaciones fiscales del mu-nicipio, el 20 de mayo de 2004 el Gobierno de Puerto Rico presentó una demanda de sentencia declaratoria, pago in-debido de fondos públicos y cobro de dinero contra los pe-ticionarios, la Legislatura Municipal y el Municipio de Rincón. En ella, el Estado alegó que el 1 de septiembre de 2000 la Oficina del Contralor de Puerto Rico emitió el In-forme de Auditoría Núm. M-01-10 en que se detallaron las operaciones fiscales del Municipio de Rincón para el pe-riodo comprendido entre el 1 de enero de 1995 y el 31 de diciembre de 1998. Añadió que del estudio surgió que la Legislatura Municipal de Rincón aprobó el aumento del señor Caro Muñiz sin apegarse a los requisitos que esboza la Ley de Municipios Autónomos.
En específico, del Informe de la Oficina del Contralor surge que la Legislatura Municipal otorgó el aumento sin antes aprobar un reglamento para regir el procedimiento de evaluación, determinación y adjudicación de sueldo *268 como exige el Art. 3.012 de la Ley de Municipios Autóno-mos, supra. El Estado añadió que la Legislatura Municipal tampoco consideró los estados financieros del municipio, que al momento de concederse el aumento reflejaban un atraso de dos años en su preparación y un déficit presu-puestario de $34,350 en los fondos operacionales. De la misma forma, la Legislatura Municipal nunca ofreció evi-dencia a la Oficina del Contralor de que consideró los siete requisitos que dispone la sección referida para conceder aumentos a los alcaldes.
Por ello, el E.L.A. solicitó que se declarara nula, ilegal y contraria a derecho la Resolución Núm. 20 que otorgó al señor Caro Muñiz el aumento de sueldo de $1,600 mensuales. Asimismo, requirió que se declarara ilegal el pago de $86,291.80 por ese aumento y se condenara a los peticionarios a su restitución, junto a cualquier otra suma que se haya cobrado, más intereses, gastos, costas y hono-rarios de abogados.
Después de varios incidentes procesales,([1]) el Tribunal de Primera Instancia celebró una vista en que las partes acordaron que la controversia se resolvería por la vía sumaria. El 15 de marzo de 2010 el E.L.A. presentó su moción al respecto. Luego de un análisis del derecho co-rrespondiente, el 15 de junio de 2010 el foro primario de-claró nula, ilegal y contraria a derecho la Resolución Núm. 20 de 19 de abril de 1997. A su vez, dispuso que el pago de los $86,291.80 fue un uso ilegal de fondos públicos, por lo que condenó a los peticionarios a su rembolso.
En su sentencia, el foro primario razonó que la inexis-tencia de un reglamento previo a la evaluación, determina-ción y adjudicación del sueldo del alcalde, no invalida, ipso facto, el aumento otorgado al señor Caro Muñiz. Sin em *269 bargo, entendió que como tampoco se consideraron los siete criterios contenidos en el Art. 3.012 de la Ley de Munici-pios Autónomos, supra, el aumento era ilegal. Por último, resolvió que el municipio de Rincón nunca solicitó una con-sulta a la O.C.A.M. directamente sobre el alcance del Art. 3.012, supra. Añadió que aunque la interpretación inicial de la O.C.A.M. sobre el Art. 3.012 fue errónea, esa oficina carece de facultad para dispensar motu proprio a los mu-nicipios del cumplimiento de la ley.
Inconformes con esa determinación, los peticionarios acudieron al Tribunal de Apelaciones. El 17 de diciembre de 2010 ese foro confirmó la sentencia recurrida. Razonó que la Resolución Núm. 20 que aprobó la Asamblea Municipal es nula, ilegal y contraria a derecho, ya que se incum-plió con lo dispuesto en el Art. 3.012 de la Ley de Munici-pios Autónomos, supra. A su vez, añadió que el Informe de Auditoría que emitió la Oficina del Contralor reflejó un déficit presupuestario municipal que la Asamblea Municipal no consideró al momento de conceder el aumento. Por ello, entendió el Tribunal de Apelaciones que el foro prima-rio concluyó correctamente que procedía la devolución del dinero que se pagó por ese aumento.
Insatisfechos todavía, los peticionarios acuden ante nos. Señalan que el Tribunal de Apelaciones erró al confirmar la sentencia del Tribunal de Primera Instancia que ordenó el pago de $86,291.80 desembolsados por el municipio de Rincón. El 16 de junio de 2011 expedimos el auto. Con la comparecencia de ambas partes, procedemos a resolver.
II
La Ley Núm. 36-1995 enmendó gran parte de la Ley de Municipios Autónomos con la intención de lograr una im-plantación adecuada de la reforma municipal que respon-diera a las necesidades fiscales que la motivaron y contri-buyera al desarrollo de administraciones municipales *270 eficientes y efectivas. Véase Exposición de Motivos de la Ley Núm. 36, 1995 (Parte 1) Leyes de Puerto Rico 194. Cónsono con esa política pública, el legislador añadió a la Ley de Municipios Autónomos el Art. 3.012, supra. En ese artículo se delimitaron los criterios a tomarse en consideración para otorgar aumentos de sueldo a los alcaldes.
El artículo expresado dispone que:
La Legislatura Municipal aprobará, con el voto de dos ter-ceras partes de los miembros del cuerpo, el reglamento que regirá los procedimientos de evaluación, determinación y ad-judicación, del sueldo del alcalde.
Al considerar aumentos de salarios para el alcalde, la Legis-latura tomará en consideración, entre otros, que dicho cuerpo encuentre necesarios, los siguientes criterios:
(1) El presupuesto del municipio y la situación fiscal de los ingresos y gastos reflejados en los informes de auditoría o single audit.
(2) La población y el aumento en los servicios a la comunidad.
(3) El cumplimiento con los controles fiscales y administra-tivos establecidos por O.C.A.M., la Oficina del Contralor y el gobierno federal.
(4) La complejidad de las funciones y responsabilidades del Primer Ejecutivo.
(5) El costo de vida, información que deberá suplir la Junta de Planificación a solicitud de la Legislatura Municipal.
(6) La habilidad de atraer capital y desarrollo económico al respectivo municipio.
(7) Tomar en cuenta los sueldos devengados por los miem-bros de la Asamblea Legislativa y los Secretarios del Gabinete Constitucional. Art. 3.012, supra.
En E.L.A. v. Crespo Torres, supra, pág. 789, señalamos que la intención del legislador al establecer los criterios del Art. 3.012 de la Ley de Municipios Autónomos, supra, fue disponer “unas guías generales para la consideración de las legislaturas municipales al aprobar los aumentos de sueldo de los alcaldes”. Fundamentamos nuestra conclu-sión en que esa interpretación era cónsona “con la entonces recién aprobada reforma municipal, la cual ... tuvo el propósito de conceder mayor autonomía a los municipios”. Id., *271 pág. 789. Explicamos que “puesto que la Ley de Municipios Autónomos establece que su texto se interpretará de ma-nera liberal y en armonía con la buena práctica de la polí-tica fiscal, debemos concluir que ... la legislatura municipal debe cumplir con los criterios guías que establece la ley”. Id., págs. 789-790. Sin embargo, determinamos que a pesar de que las asambleas municipales deben apegarse a los criterios mencionados, estos deben entenderse como unas guías mínimas y no como una lista taxativa. Id.
De la misma forma, expusimos que aunque la O.C.A.M. es la oficina que “tiene la responsabilidad principal de ase-sorar y aprobar reglamentación con el propósito de asegu-rar la aplicación de los procedimientos contables general-mente aceptados, el cumplimiento con las normas de la Oficina del Contralor de Puerto Rico y la corrección de prácticas que constituyen fuente de señalamientos admi-nistrativos y contables”, sus opiniones, al igual que las del Secretario de Justicia, no tienen carácter vinculante, sino persuasivo para los municipios. E.L.A. v. Crespo Torres, id., pág. 791. Véase, además, E.L.A. v. S.L.G. Negrón-Rodríguez, 184 D.P.R. 464 (2012). Así las cosas, concluimos que es ilegal la otorgación de un aumento de sueldo sin antes aprobarse un reglamento que rija su evaluación, determi-nación y adjudicación. E.L.A. v. Crespo Torres, supra, págs. 791-792.
Un análisis de los hechos ante nuestra consideración demuestra que el aumento concedido al señor Caro Muñiz no se ciñó al proceso estatuido en el Art. 3.012 de la Ley de Municipios Autónomos, supra. La Legislatura Municipal de Rincón acató la interpretación errada que ofreció la O.C.A.M. a varios municipios sobre el procedimiento para otorgar aumentos y a base de ella, concedió el del señor Caro Muñiz. Por ello, nunca otorgó un reglamento antes de conceder el aumento.
Asimismo, en cuanto a la evaluación de los siete crite-rios contenidos en el Art. 3.012, supra, surge de la Resolu- *272 ción Núm. 20 que la Legislatura Municipal de Rincón tomó en consideración la población y el aumento en los servicios a la comunidad, así como la complejidad de las funciones y responsabilidades del alcalde. Además, la Legislatura Municipal razonó que desde el 1993 hasta el 1997, fecha en que se aprobó el aumento, el salario del alcalde no había sido incrementado, contrario a otros funcionarios públicos a quienes sí se les aumentó su sueldo. También, evaluó el salario del entonces alcalde de Rincón con el de otros pri-meros ejecutivos municipales. Como vemos, la Legislatura Municipal no consideró: (1) el presupuesto del municipio y la situación fiscal de los ingresos y gastos reflejados en los informes de auditoría o single audit, (2) el cumplimiento con los controles fiscales y administrativos establecidos por O.C.A.M., la Oficina del Contralor y el gobierno federal; (3) el costo de vida, información que deberá suplir la Junta de Planificación a solicitud de la'Legislatura Municipal; (4) la habilidad de atraer capital y desarrollo económico al mu-nicipio, ni (5) los sueldos devengados por los miembros de la Asamblea Legislativa y los Secretarios del Gabinete Constitucional.
Por último, en E.L.A. v. Crespo Torres, supra, pág. 790, señalamos que “[e]l Art. 3.012, supra, parece otorgar flexi-bilidad a la legislatura municipal para evaluar cuáles son los aspectos más importantes en cada municipio y otorga deferencia al juicio que en el pasado ha tenido cada legis-latura municipal al cumplir con tan ardua encomienda”. Añadimos que aunque “el historial legislativo es claro al señalar que, la legislatura municipal debe otorgar una gran importancia al costo de la vida”, “los criterios expues-tos en la ley no impiden que la legislatura municipal pueda utilizar otros factores que le ayuden en su evaluación”. Id. En fin, ultimamos que la determinación de si la legislatura municipal cumplió con los criterios para otorgar un au-mento “requiere un análisis de razonabilidad”. Id.
*273 Un estudio de los factores que ponderó la Legislatura Municipal de Rincón en la Resolución Núm. 20 de 29 de abril de 1997, a todas luces nos obliga a concluir que su evaluación para conceder el aumento al señor Caro Muñiz fue irrazonable. Como posteriormente señaló la Oficina del Contralor en su informe, la Legislatura Municipal de Rin-cón no consideró los estados financieros del municipio que reflejaban un atraso de dos años en su preparación y un déficit presupuestario de $34,350 en los fondos operaciona-les del municipio.
Evaluado el proceso por el que se aumentó el sueldo del señor Caro Muñiz, determinamos que la Legislatura Municipal de Rincón se apartó del Art. 3.012 de la Ley de Municipios Autónomos, supra. La Legislatura Municipal de Rincón acató la interpretación errada de la O.C.A.M. a varios municipios sobre el procedimiento para otorgar au-mentos y, a base de ella, concedió el del señor Caro Muñiz. No aprobó un reglamento para regir el procedimiento de evaluación, determinación y adjudicación del sueldo del alcalde. Tampoco tomó en consideración como guías los siete criterios esbozados en el Art. 3.012, supra. Por consi-guiente, el aumento de sueldo conferido al señor Caro Mu-ñiz fue ilegal.
III
Nos incumbe ahora determinar si corresponde al señor Caro Muñiz devolver las sumas de dinero que recibió por el aumento de sueldo otorgado indebidamente. Como en E.L.A. v. Crespo Torres, supra, el pago que se realizó al señor Caro Muñiz fue “en la confianza y con la creencia de que se estaba cumpliendo con una obligación válida”. íd., pág. 793. En otras palabras, la creencia general era que el alcalde tenía derecho a recibir el correspondiente aumento conforme a la interpretación inicial que la O.C.A.M. realizó *274 del Art. 3.012, supra. Id. Sin embargo, en E.L.A. v. Crespo Torres, supra, determinamos que la retribución producto de un aumento concedido a un alcalde sin conformarse al proceso que exige el Art. 3.012 de la Ley de Municipios Autónomos, supra, es ilegal. Se trata, pues, del cobro de lo indebido. íd., pág. 793.
Como es sabido, el Art. 1795 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5121, esboza la doctrina del cobro de lo indebido. En particular, el artículo ordena que “[c]uando se reciba alguna cosa que no había derecho a cobrar, y que por error ha sido indebidamente entregada, surge la obli-gación de restituirla”. Id. Hasta el año pasado, nuestro or-denamiento jurídico distinguía entre el error de hecho y el error de derecho para propósitos de la restitución en casos de cobro de lo indebido. Sin embargo, abandonamos esa postura en E.L.A. v. Crespo Torres, supra. Allí, acogimos la norma moderna desarrollada en la jurisdicción española que desde hace más de medio siglo abandonó la distinción entre el error de hecho y el de derecho para propósitos de la restitución. Ahora bien, esta nueva norma, dispusimos, se-ría aplicada prospectivamente. Por esa razón, no la em-pleamos en E.L.A. v. Crespo Torres, supra.
Una lectura de los hechos de este caso demuestra que el aumento concedido al señor Caro Muñiz no ocurrió con pos-terioridad a nuestra decisión en E.L.A. v. Crespo Torres, supra. Por consiguiente, no podemos aplicarle a la causa de epígrafe la nueva norma pautada en el sentido de que pro-cede la restitución de lo que fue ilegalmente pagado, ya sea por error de hecho o de derecho. Así las cosas, evaluemos la controversia ante nos a la luz de la antigua doctrina que sí distinguía entre ambos tipos de errores.
En Sepúlveda v. Depto. de Salud, 145 D.P.R. 560, 565-566 (1998), explicamos que la obligación de restitución que impone el Art. 1795 del Código Civil, supra, no nace de la voluntad contractual, sino más bien cuasicontractual. Rei- *275 teramos que para que operara la doctrina, era necesaria la concurrencia de tres requisitos. Estos son que
(1) se produzca un pago con la intención de extinguir una obligación; (2) que el pago realizado no tenga una justa causa, es decir, que no exista obligación jurídica entre el que paga y el que cobra, o, si existiendo, sea por una cuantía menor a la pagada, y (3) que el pago haya sido hecho por error y no por mera liberalidad o por cualquier otro concepto. (Énfasis suprimido). íd., págs. 566-567.
Desde los inicios del desarrollo de esta figura en nuestra jurisdicción, adoptamos la norma de que solo el error de hecho y no el de derecho, daba lugar a la obligación de restituir. íd., pág. 567. Véase, además, Arandes v. Báez, 20 D.P.R. 388 (1914). Explicamos que el error de derecho con-sistía en
... aquel en el que incurre quien actúa sin ajustarse a lo dis-puesto por una norma jurídica vigente. En el contexto del co-bro de lo indebido comete error de derecho quien realiza un pago bajo la creencia de que el mismo le es exigible en derecho, bien por desconocimiento de la norma que lo descarga del pago, bien por una interpretación errónea del derecho aplicable. Sepúlveda v. Depto. de Salud, supra, pág. 568.
Precisamente, en Cartagena v. E.L.A., 116 D.P.R. 254, 257 (1985), resolvimos que una actuación basada en la interpretación errónea de una ley o reglamento constituye un error de derecho. Véase, además, Sepúlveda v. Depto. de Salud, supra, pág. 568 esc. 9.
Por el contrario, sobre el error de hecho señalamos en Sepúlveda v. Depto. de Salud, supra, pág. 568, que
... se refiere a quien obra a base de irnos hechos que no son los verdaderos. También debemos entender que se cometió un error de hecho cuando, aun conociendo los hechos verdaderos, se produce una equivocación meramente formal o de trámite; es decir, cuando se comete lo que popularmente se ha denomi-nado un “error humano”.
*276 Al igual que ocurrió en E.L.A. v. Crespo Torres, supra, y en E.L.A. v. S.L.G. Negrón-Rodríguez, supra, al aprobarse el aumento salarial al señor Caro Muñiz, la Legislatura Municipal de Rincón confió en la interpretación que hasta el momento había hecho la O.C.A.M. sobre el procedimiento estatuido en el Art. 3.012, supra. Por consiguiente, “no se trató de un error de trámite de una agencia sino de una interpretación equivocada sobre un artículo de la Ley de Municipios Autónomos”. E.L.A. v. Crespo Torres, supra, pág. 797. En otras palabras, “[a]l conceder los aumentos, confiando en la interpretación errónea del derecho aplicable que hizo la O.C.A.M., el pago hecho [al Sr. Caro Muñiz] es considerado como un error de derecho”. E.L.A. v. S.L.G. Negrón-Rodríguez, supra, pág. 23.
La disidencia se queja de que esta Sentencia envía un mensaje de corrupción que quedará impune. De nuevo, por tercera vez, aclaramos a la disidencia que su lamento no es producto de nuestros dictámenes, sino de la norma de error de Derecho que regía cuando se otorgaron los aumentos de sueldo que han sido atacados en los casos que han llegado a este Tribunal. Por eso, para evitar que la situación que nos ocupa vuelva a suceder, dejamos esa norma sin efecto de manera prospectiva en E.L.A. v. Crespo Torres, supra. La disidencia se opuso entonces a cambiar la norma jurisprudencial. De haber prevalecido la disidencia, enton-ces sí que la corrupción de la que se queja hoy habría que-dado impune para siempre.
En vista de que, según la doctrina antigua sobre cobro de lo indebido que aplicamos a estos hechos, no procede la restitución cuando el error es de derecho, el señor Caro Muñiz no tiene que restituir los $86,291.80 que recibió como aumento de sueldo.
*277 IV
Por los fundamentos antes expuestos, se revoca la deter-minación del Tribunal de Apelaciones que confirmó al Tribunal de Primera Instancia. Aunque el aumento del señor Caro Muñiz fue ilegal, no procede la devolución del dinero que recibió, conforme pautamos en E.L.A. v. Crespo Torres, supra.
Lo acordó y ordena el Tribunal, y certifica la Secretaria del Tribunal Supremo. El Juez Presidente Señor Hernández Denton emitió una opinión disidente, a la cual se unió la Juez Asociada Señora Rodríguez Rodríguez. La Jueza Asociada Señora Fiol Matta disintió sin opinión escrita.
(.Fdo.) Larissa Ortiz Modestti

Secretaria del Tribunal Supremo Interina

— O —

(1) Entre esos trámites estuvo la solicitud del municipio de Rincón y su Asam-blea Municipal de que se desestimara la causa de acción en su contra. Argüyeron que no eran partes indispensables en el pleito y no deseaban litigar ni intervenir en él. Luego de evaluar la solicitud, el foro primario desestimó la causa de acción contra el municipio y la Asamblea Municipal.