El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
La parte apelante, el Estado Libre Asociado de Puerto Rico, nos solicita la revisión de una sentencia del Tribunal de Apelaciones que confirmó una sentencia sumaria del Tribunal de Primera Instancia, Sala Superior de Mayagüez. Asimismo, desestimó una demanda de senten-cia declaratoria, el pago indebido de fondos públicos y el cobro de dinero presentado por el Estado contra el munici-pio de Añasco, el entonces alcalde Hon. Pablo Crespo y la legislatura municipal. El foro primario determinó que el aumento de sueldo conferido al alcalde se otorgó conforme a derecho.
Concluyó que el aumento se hizo acorde a la entonces interpretación de la Oficina del Comisionado de Asuntos Municipales (O.C.A.M.) referente al Art. 3.012 de la Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4112), conocida como la Ley de Municipios Autónomos. Esa inter-pretación es contraria a la de la Oficina del Contralor de Puerto Rico, lo que llevó a esa entidad a cuestionar los procedimientos para la concesión del aumento en éste y otros municipios.
Para resolver este caso debemos interpretar, por pri-mera vez, el Art. 3.012 de la Ley de Municipios Autónomos, supra. En particular, nos corresponde examinar si los cri-terios establecidos en ese artículo son una mera guía ilus-trativa o si la asamblea municipal debe cumplir con ellos de manera taxativa. Además, debemos examinar si la le-gislatura municipal podía otorgar el aumento de salario del alcalde antes de aprobar el reglamento de evaluación, determinación y adjudicación. En esta ocasión, también, tenemos la oportunidad de revisar y actualizar la doctrina del error de hecho y derecho establecida en los casos de cobro de lo indebido.
*780 I
El 29 de agosto de 2000, el Contralor de Puerto Rico emitió el Informe Núm. M-01-09, el cual contenía los resul-tados de una auditoría realizada al municipio de Añasco para el período de 1 de julio de 1996 a 30 de junio de 1999. Este informe mencionó que no se prepararon los estados financieros del municipio para 1994-1995 a 1996-1997. También señaló que los estados financieros del municipio para el año fiscal 1993-1994 reflejaban un déficit de $755,291 en los fondos operacionales. Por último, y en lo pertinente, la Oficina del Contralor reveló que el aumento de sueldo conferido al alcalde en 1998 incumplió los siete criterios establecidos en el Art. 3.012 de la Ley de Munici-pios Autónomos, supra, y la aprobación previa de un regla-mento para la evaluación, determinación y adjudicación del sueldo del alcalde. Ese artículo dispone de la manera siguiente:
La Legislatura Municipal aprobará, con el voto de dos ter-ceras partes de los miembros del cuerpo, el reglamento que regirá los procedimientos de evaluación, determinación y ad-judicación, del sueldo del alcalde.
Al considerar aumentos de salarios para el alcalde, la Legis-latura tomará en consideración, entre otros, que dicho cuerpo encuentre necesarios, los siguientes criterios:
1. El presupuesto del municipio y la situación fiscal de los ingresos y gastos reflejados en los informes de auditoría o single audit.
2. La población y el aumento en los servicios a la comunidad.
3. El cumplimiento con los controles fiscales y administra-tivos establecidos por O.C.A.M., la Oficina el Contralor y el gobierno federal.
4. La complejidad de las funciones y responsabilidades del Primer Ejecutivo.
5. El costo de vida, información que deberá suplir la Junta de Planificación a solicitud de la Legislatura Municipal.
6. La habilidad de atraer capital y desarrollo económico al respectivo municipio.
7. Tomar en cuenta los sueldos devengados por los miem-bros de la Asamblea Legislativa y los Secretarios del Gabinete Constitucional.
*781 A esos efectos, el 6 de mayo de 1998 la Legislatura Municipal de Añasco había aprobado la Resolución Núm. 15, Serie 1997 — 1998, para aumentar el salario del entonces alcalde, Hon. Pablo Crespo, de $3,000 a $4,000 mensuales. La resolución no expresó qué criterios, de los contenidos en la Ley de Municipios Autónomos, fueron considerados. No obstante, la legislatura municipal justificó el aumento del alcalde mediante las expresiones siguientes:
Actualmente el costo de vida es tan alto en especial para los funcionarios públicos que tienen que realizar tantas y tan va-riadas tareas para cumplir con las exigencias de la posición que ocupan.
El Alcalde de cualquier Municipio de Puerto Rico se envuelv[e] en tantas actividades y gestiones para beneficios de su pueblo que dicho envolvimiento es de todos los casos mayor que la compensación que recibe por concepto de salario.
De forma tal que las gestiones que realiza dicho Ejecutivo Municipal no vaya[n] en detrimento de su salud económica es imprescindible que dicho salario sea atemperado con la com-plejidad de su trabajo. Apéndice de la Apelación, pág. 102.
Además, la resolución mencionó que comenzaría a regir inmediatamente después de su aprobación por el alcalde y la legislatura municipal. Ese mismo día, horas más tarde, la Legislatura Municipal de Añasco aprobó el reglamento para establecer el proceso de evaluación y adjudicación del sueldo del alcalde. Para ello, emitió la Resolución Núm. 22. En ella afirmó que preparó un reglamento de dos páginas para la evaluación del sueldo del alcalde de Añasco. Tanto la Resolución Núm. 15 como la Núm. 22 fueron aprobadas por el alcalde el 12 de mayo de 1998.
La Oficina del Contralor opinó que la legislatura municipal aprobó este aumento de forma incorrecta. De hecho, el informe del Contralor mencionó que la Opinión del Se-cretario de Justicia de 23 de febrero de 1999 expuso que las legislaturas municipales “deben tomar en consideración to-dos y cada uno de los requisitos que establece el Artículo 3.012” de la Ley Núm. 81 al aumentar el sueldo del alcalde. Querella, pág. 23. Por tal razón, la Oficina del Contralor recomendó al Departamento de Justicia estudiar la legali- *782 dad de la Resolución Núm. 15 y tomar las medidas legales correspondientes.
En vista de que la Resolución Núm. 15 no consideró todos los criterios esbozados en el Art. 3.012 de la Ley de Municipios Autónomos, supra, y que el reglamento fue aprobado con posterioridad al aumento de sueldo del al-calde, el Estado consideró que el aumento de sueldo conce-dido al alcalde fue ilegal y ultra vires. Por lo tanto, el 20 de mayo de 2004 el Estado demandó al Municipio, la legisla-tura municipal y al entonces alcalde. El Estado requirió que el alcalde repusiera todas las sumas cobradas a base de la Resolución Núm. 15 y alegó que la legislatura municipal debió cumplir tácitamente con todos los requisitos es-tablecidos en el Art. 3.012 de la Ley de Municipios Autóno-mos, supra.
Por su parte, los demandados recurridos contestaron la demanda, denegando que el aumento fuera ilegal. Estos alegaron que al conceder el aumento cumplieron con las directrices y la recomendación de la O.C.A.M., la cual, en aquel momento, establecía que los criterios contenidos en el Art. 3.012, supra, no eran exhaustivos.
Al momento de emitir el Contralor el Informe M-01-09, la diferencia en interpretación entre esta Oficina y la O.C.A.M. era conocida. La O.C.A.M. ya había circulado va-rios memorandos a distintos municipios en los que se había concluido que los criterios del Art. 3.012 de la Ley de Mu-nicipios Autónomos, supra, no eran exhaustivos, sino que ilustran algunas de las muchas situaciones que se han de considerar. A diferencia de la Opinión del Secretario de Justicia, la O.C.A.M. interpretó, inicialmente, que los cri-terios establecidos en el citado Art. 3.012 no eran una lista taxativa de elementos que se han de considerar. Por el con-trario, la O.C.A.M. entendía que eran unos factores suge-ridos a la legislatura municipal y que incumplir con alguno de ellos no volvería nulo el proceso del aumento.
Por ejemplo, la O.C.A.M. emitió el 5 de julio de 1995 un memorando circular al municipio de Patillas en el que se-ñaló que no creía que el “reglamento ordenado en el primer *783 párrafo [del Artículo 3.012 de la Ley de Municipios Autónomos] sea una condición sine qua non de un aumento al Alcalde”. Apéndice de la Apelación, pág. 148. La opinión se emitió al poco tiempo de aprobarse ese artículo y hacía referencia a un período de transición en el que se podían emitir aumentos sin la aprobación del reglamento. Tam-bién señaló que ese reglamento debía aprobarse a la mayor brevedad.
El 29 de octubre de 1998, la O.C.A.M. emitió al munici-pio de Aguas Buenas un memorando circular en el que se-ñaló lo siguiente, en referencia al Art. 3.012, supra:
1. Los criterios de la ley no son exhaustivos, sino meramente ilustrativa [sic] de algunos de los muchos criterios a conside-rar al evaluar la compensación justa que debe percibir el Alcalde.
2. La mera ausencia de uno de los criterios al realizar la eva-luación no es de por sí fatal; la ley no busca un estudio con rigor académico sino una decisión razonable y mesurada.
3. El análisis de la política pública debe ser ponderado, por ello, la ausencia de un criterio debe ser compensada. Apéndice de la Apelación, pág. 158.
Además, indicó que algunos de los criterios, como el de single audit, planteaban problemas particulares para los municipios. Explicó que, en tales casos, era muy difícil que los municipios pudieran cumplir inmediatamente con ese criterio y que no era razonable que el legislador “reconocie-ra a los municipios el poder de fijar el salario del Alcalde y que al mismo tiempo, les impidiera el ejercicio de tal facul-tad imponiéndoles” una condición que no tendrían a su dis-posición en años. Apéndice de la Apelación, pág. 158. En esa circular, la O.C.A.M. mencionó que “ha sido consistente en su interpretación” desde que ese artículo se aprobó y que incumplir con todos los criterios no era causa para nulidad.
Del mismo modo, surge del expediente un memorando circular de 14 de junio de 1999 en el que la O.C.A.M. in-formó al municipio de Yabucoa que consecuentemente ha-bía expresado que “[l]os criterios que la ley establece no son exhaustivos, sino que meramente ilustran algunas de *784 las muchas situaciones a considerar por la Asamblea al evaluar un propuesto aumento de salario para los Alcaldes”. Apéndice de la Apelación, pág. 161. Es más, ex-puso que “[l]a mera ausencia de uno de los criterios al rea-lizar la evaluación no debe ser de por sí fatal, ni debe ser causa de nulidad automática”. Id. La O.C.A.M. expuso que no presumía que la ley buscara un estudio limitante y con rigor académico, sino una decisión razonable de acuerdo con la realidad y condición económica de cada municipio.
En fin, los apelados alegaron que, desde la aprobación de la Resolución Núm. 15, la O.C.A.M. había emitido inter-pretaciones contrarias a las expuestas por la Oficina del Contralor sobre el citado Art. 3.012. De hecho, los apelados estimaron que ellos tomaron en consideración esas opinio-nes para aumentar el sueldo del alcalde y que no debían ser penalizados por ello. Confiaron de buena fe en la inter-pretación ofrecida por la O.C.A.M. y alegaron que ello de-bía ser suficiente para que la actuación de la legislatura municipal fuera válida.
Tras varios trámites procesales, los apelados presenta-ron una solicitud de sentencia sumaria en la que insistie-ron en que la norma de derecho vigente, en cuanto a la interpretación del Art. 3.012, supra, era la que había esta-blecido la O.C.A.M. Los apelados alegaron que no existía controversia de hechos entre las partes y que lo único que restaba adjudicar era si al confiar en las opiniones de la O.C.A.M., el municipio de Añasco actuó de manera ilegal.
El 5 de febrero de 2007, el Estado solicitó también una sentencia sumaria y presentó su oposición a la instada por los apelados. El Tribunal de Primera Instancia declaró “con lugar” la moción de sentencia sumaria de los apelados. Inconforme, el Estado acudió al Tribunal de Ape-laciones, el cual confirmó al foro primario. En vista de lo anterior, el Estado presentó un recurso de apelación ante este Tribunal y solicitó que declaremos nulos los actos de la legislatura municipal por éstos ser contrarios a la Ley de Municipios Autónomos. Expuso que la opinión de la O.C.A.M. era completamente errada y contraria a la letra *785 de la ley, por lo que no podía ser una justificación al com-portamiento de la legislatura municipal. Alegó que era in-material la opinión de la O.C.A.M., ya que una interpreta-ción de una agencia no podía ir por encima del contenido de la ley. Explicó que es a la Rama Judicial y no a la O.C.A.M., a quien le corresponde pasar juicio sobre el con-tenido del Art. 3.012 de la Ley de Municipios Autónomos, supra.
Además, el Estado insiste en que no procede dar defe-rencia a una interpretación de derecho realizada por una agencia, cuando ella misma la abandonó posteriormente. Indicó que el 18 de julio de 2002 la O.C.A.M. reconsideró su directriz e indicó en una circular que las legislaturas mu-nicipales “tienen que considerar todos y cada uno de los criterios” que menciona el Art. 3.012, supra, y que debía “constar en las actas y en las ordenanza de aprobación de aumento, evidencia fehaciente de que se analizaron todos” los criterios. Además, la O.C.A.M. indicó que incumplir con alguno de esos criterios, sería causa para la nulidad del aumento. También mencionó que los aumentos concedidos al amparo de las opiniones anteriores no se verían afecta-dos por estas directrices. Es por ello que el Estado sostiene que O.C.A.M. no tenía la capacidad para determinar lo anterior y que ello le corresponde a los tribunales. Por último, el Estado solicitó que revoquemos la sentencia del Tribunal de Apelaciones en cuanto a que la actuación de los deman-dados fue válida y que devolvamos el caso al foro primario, para un detenido examen, acerca de si el incumplimiento de esos requisitos conlleva la nulidad del acto y, por ende, la devolución de los salarios pagados ilegalmente.
Los apelados aseguran que se ampararon en la interpre-tación legal previa de la O.C.A.M. y que ellos debían darle deferencia a esa opinión. Explicaron que no existía una opinión de algún tribunal al respecto, por lo que era irra-zonable concluir que sus actuaciones fueron ilegales, y por ende, nulas. Adujeron que mucho antes de que surgiera la controversia de autos, ya las diferencias en la interpreta-ción del Art. 3.012 entre la Oficina del Contralor y la *786 O.C.A.M. eran conocidas. La incompatibilidad entre la O.C.A.M. y el Contralor es evidencia de que la ley no es-taba clara y que amerita interpretación.
Por su parte, los apelados indican que nuestra determi-nación afectará a todos los alcaldes que confiaron en la determinación inicial de la O.C.A.M. Entienden que, de no-sotros estimar que sus actuaciones fueron ilegales, crearía-mos una inestabilidad en la base jurídica de los municipios y en el funcionamiento de su base administrativa. Alegan que ello también minaría la confianza de los funcionarios públicos y de los empleados municipales en las entidades que los regulan. Aducen que el remedio que propone el Es-tado conllevaría que otros alcaldes —que tomaron posesión de sus cargos luego de tales aumentos y que llevan años percibiéndolos— los tendrían que devolver. De igual modo, los apelados alegaron que se afectan las aportaciones pa-tronales realizadas al Departamento de Hacienda, al Sis-tema de Retiro y al Seguro Social. En fin, concluyen que el efecto sería en cadena y catastrófico.
Procede el recurso de apelación, ya que existe un con-flicto sustancial entre decisiones previas del Tribunal de Apelaciones. En la sentencia que aquí se apela, el Tribunal de Apelaciones, Región Judicial de Mayagüez-Aguadilla, validó el aumento de sueldo otorgado al alcalde de Añasco, a pesar de que no se había aprobado el reglamento reque-rido por el Art. 3.012 de la Ley de Municipios Autónomos, supra. Por el contrario, en un caso similar al de autos, E.L.A. v. Bernando Negrón Montalvo, caso KLAN200701578, el Tribunal de Apelaciones, Región Judicial de Ponce, concluyó que eran nulos e ineficaces los au-mentos concedidos a un alcalde sin que antes se hubiese aprobado el reglamento. La apelación quedó sometida para nuestra consideración el 5 de marzo de 2010. Procedemos a resolver con el beneficio de la comparecencia de ambas partes.
*787 II
Este pleito, al igual que otros presentados por el Estado contra algunos municipios, nace de la diferencia interpre-tativa entre la Oficina del Contralor de Puerto Rico y la O.C.A.M. respecto al Art. 3.012 de la Ley de Municipios Autónomos, supra. De hecho, la Comisión Conjunta sobre Informes Especiales del Contralor de la Cámara de Repre-sentantes del E.L.A. citó al Departamento de Justicia para que éste se expresara sobre la diferencia. El Departamento de Justicia emitió un memorando el 23 de febrero de 1999, en el cual concluyó que las legislaturas municipales deben “tomar en consideración todos y cada uno de los requisitos” del Art. 3.012, supra. También, señaló que ese artículo me-ramente establece los criterios mínimos que han de ser considerados. Fue luego de que el Secretario de Justicia emitió su opinión que la O.C.A.M. cambió su postura inter-pretativa en el 2002.
La Ley Núm. 81, supra, fue aprobada como parte de una reforma municipal en Puerto Rico. Esa reforma otorgó a los municipios un mayor grado de autonomía fiscal y de gobierno propio. Alcalde Mun. de Humacao v. Ramos Cofresí, 140 D.P.R. 587, 595 (1996). La Ley de Municipios Autónomos declaró política pública del Estado Libre Asociado de Puerto Rico la otorgación del máximo posible de autonomía a los municipios. Ello conllevó proveerles a éstos las herramientas financieras, los poderes y las facultades para asumir el rol central del desarrollo urbano, social y económico municipal. Art. 1.002 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4001; Mun. San Juan v. Banco Gub. Fomento, 140 D.P.R. 873, 886 (1996).
El Art. 1.044 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4002, expone las normas de interpretación de esta ley. Dicta que
[l]os poderes y facultades conferidos a los municipios por este subtítulo o cualquier otra ley, excepto disposición en con- *788 trario, se interpretarán liberalmente, en armonía con la buena práctica de política pública fiscal y administrativa, de forma tal que siempre se propicie el desarrollo e implantación de la política pública enunciada en este subtítulo de garantizar a los municipios las facultades necesarias en el orden jurídico, fiscal y administrativo para atender eficazmente las necesida-des y el bienestar de sus habitantes. (Enfasis suplido.)
La Ley Núm. 36 de 13 de abril de 1995 (1995 (Parte 1) Leyes de Puerto Rico 194) enmendó la Ley de Municipios Autónomos, entre otras cosas, para añadir el Art. 3.012, supra. Ese artículo establece los criterios que las legislaturas municipales deberán tomar en consideración al otorgar aumentos de salarios a los alcaldes. La inclusión de este artículo se presentó en la Sec. 13 en el P. de la C. 627 de 30 de abril de 1993, Duodécima Asamblea Legislativa, Segunda Sesión Ordinaria. Inicialmente, en ese proyecto se contempló establecer unas escalas salariales para los alcaldes, las cuales dependerían de la cantidad de habitantes que existiera en cada municipio. Además, se disponía que las escalas de salarios se evaluarían cada cinco años por la Asamblea Legislativa. Todo ello tenía el fin de atemperar los salarios al costo de vida y el grado de cumplimiento fiscal de los municipios. Sin embargo, posteriormente se alteró el lenguaje del proyecto para que fuese la legislatura municipal lo que aprobara el sueldo del alcalde a la luz de ciertos criterios de carácter fiscal.
El Primer Informe de la Comisión de Asuntos Municipa-les de la Cámara de Representantes de 26 de agosto de 1993 sobre el sustitutivo al P. de la C. 627, indicó que la Asamblea Municipal es el cuerpo rector que dicta la com-pensación que recibe el alcalde y que “históricamente, dicho cuerpo ha demostrado prudencia y justicia al aprobar dichos salarios a pesar de no contar con disposiciones es-pecíficas bajo las anteriores leyes de aplicación a los asun-tos municipales”. Mencionó, además, que
[l]a disparidad en los sueldos de los Alcaldes responde a la falta de guías y criterios uniformes que puedan aplicarse por la Asamblea Municipal para determinar el aumento de salario del Primer Ejecutivo. La importancia de las disposiciones que *789 se introducen en la medida sustitutiva permiten que la Asam-blea Municipal evalúe la capacidad fiscal del municipio para compensar adecuadamente al Alcalde tomando en considera-ción el presupuesto, la población, la complejidad de las funcio-nes, las responsabilidades del Primer Ejecutivo y el costo de vida. Este último, es un dato indispensable que deberá suplir la Junta de Planificación a las Asambleas. (Énfasis suplido.) Primer Informe de la Comisión de Asuntos Municipales de la Cámara, Sueldos de los Alcaldes, págs. 7-9.
Del mismo modo, el Segundo Informe emitido por la Co-misión de Asuntos Municipales de la Cámara de 9 de mayo de 1994 consideró los mismos factores. No obstante, añadió que “además, se dispone que cualquier aumento de salario del Alcalde aprobado por la Asamblea, tendrá efectividad expirado el término o cuatrienio en el cual se apruebe la ordenanza”. Segundo Informe de la Comisión de Asuntos Municipales de la Cámara, Sueldos de los Alcaldes, pág. 7. El Segundo Informe también señaló que se introduce el Art. 3.012, supra, para “disponer criterios que servirán de guía a las Asambleas Municipales en la determinación de un sueldo razonable y justo para el Primer Ejecutivo Municipal al amparo, principalmente, de la capacidad fiscal del municipio”. También indicó que, además de sus escalas salariales, las asambleas municipales —hoy conocidas como legislaturas municipales— deberán aprobar un re-glamento que rija el procedimiento de evaluación, determi-nación y adjudicación del salario del alcalde.
Tras hacer un estudio exhaustivo del historial legisla-tivo de la enmienda que implantó el Art. 3.012 de la Ley de Municipios Autónomos, supra, concluimos que el propósito de la Asamblea Legislativa fue establecer unas guías gene-rales para la consideración de las legislaturas municipales al aprobar los aumentos de sueldo de los alcaldes. Todo ello es conforme con la entonces recién aprobada reforma municipal, la cual, como ya indicamos, tuvo el propósito de conceder mayor autonomía a los municipios. Es decir, puesto que la Ley de Municipios Autónomos establece que su texto se interpretará de manera liberal y en armonía con la buena práctica de la política fiscal, debemos concluir *790 que la legislatura municipal debe cumplir con los criterios guías que establece la ley. Ahora bien, éstos son irnos cri-terios mínimos sugeridos y no una lista taxativa. Concluir lo opuesto sería contrario al propósito que la propia ley expone respecto a su interpretación liberal y a la intención legislativa de proveer más autonomía a los municipios.
El historial legislativo es claro al señalar que, la legis-latura municipal debe otorgar una gran importancia al costo de la vida. La Legislatura Municipal de Añasco con-sideró esto y lo hizo constar expresamente en su resolución. El Art. 3.012, supra, parece otorgar flexibilidad a la legislatura municipal para evaluar cuáles son los as-pectos más importantes en cada municipio y otorga defe-rencia al juicio que en el pasado ha tenido cada legislatura municipal al cumplir con tan ardua encomienda. Queda claro que los criterios expuestos en la ley no impiden que la legislatura municipal pueda utilizar otros factores que le ayuden en su evaluación. Es por ello que la ley en nada impide la adopción de otros criterios adicionales. Opina-mos que la determinación de si una legislatura municipal cumplió o no con los criterios para otorgar un aumento requiere un análisis de razonabilidad.
Establecido que la intención legislativa es que los siete criterios contenidos en el segundo párrafo del Art. 3.012, supra, son guías para determinar lo que constituye un sa-lario razonable y justo para los alcaldes, concluimos que la Legislatura Municipal de Añasco cumplió con el mandato de la ley.(1) Nos resta determinar si se podía otorgar un aumento al alcalde sin haber aprobado previamente un re- *791 glamento para regir los procedimientos de evaluación, de-terminación y adjudicación de éste, tal y como dispone el primer párrafo del artículo.
H — f 1 — I I — I
El legislador creó la O.C.A.M. mediante la Ley de Municipios Autónomos. Esa oficina tiene la responsabilidad principal de asesorar y aprobar reglamentación con el propósito de asegurar la aplicación de los procedimientos contables generalmente aceptados, el cumplimiento con las normas de la Oficina del Contralor de Puerto Rico y la corrección de prácticas que constituyen fuente de señalamientos administrativos y contables. Art. 19.001 (21 L.P.R.A. sec. 4901). Además, el Art. 19.002(a), (b) y (q) de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4902(a), (b) y (q), dispone que la O.C.A.M. tiene la función y responsabilidad, entre otras, de: (1) reglamentar, asesorar y dar asistencia técnica y profesional a los municipios en las materias relacionadas con su organización, administración, funcionamiento y operación; (2) reglamentar, asesorar y prestarle ayuda técnica a los municipios en la preparación y presentación del proyecto de resolución del presupuesto general de ingresos y gastos, y (3) evaluar las leyes aplicables a los municipios y someter a la Legislatura sus recomendaciones sobre las acciones legislativas que estimen deben adoptar. Es por todo lo anterior que los apelados entienden que la interpretación de la O.C.A.M. es vinculante.
El Tribunal de Primera Instancia acogió la moción de sentencia sumaria que presentó el municipio de Añasco y concluyó que la interpretación de la O.C.A.M. era la norma jurídica aplicable a los municipios cuando se aprobó la Re-solución Núm. 15. Cuando se aprobó el aumento del al-calde de Añasco, la O.C.A.M., ya había interpretado que la *792 Ley de Municipios Autónomos no requería la aprobación previa del reglamento. Por tal razón, el foro primario de-terminó que no procedía el recobro del aumento de sueldo del alcalde por tratarse de un “error en la aplicación e in-terpretación del Derecho”. El Tribunal de Apelaciones con-firmó esa determinación.
Indudablemente, la Ley de Municipios Autónomos re-quiere la adopción de un reglamento para regir los proce-dimientos de evaluación, determinación y adjudicación de un aumento de sueldo al alcalde. Esto surge de la letra clara de la ley. Es por ello que la interpretación de la O.C.A.M. no puede impartirle validez a un aumento de sueldo que se realizó sin cumplir con la ley. Las opiniones de la O.C.A.M. solamente tienen fuerza persuasiva para los municipios.
A modo de ejemplo, debemos evaluar el trato que este Tribunal otorga a las opiniones del Secretario de Justicia. Hemos señalado en varias ocasiones que las opiniones del Secretario de Justicia son de carácter persuasivo y no obli-gan a los tribunales. Es más, en San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640, 672 (2008), indicamos lo siguiente:
En cuanto al efecto de las Opiniones del Secretario de Jus-ticia a nivel interno de las agencias del Ejecutivo, se han ela-borado teorías que le adscriben un carácter consultivo, no mandatorio, por lo que —teóricamente— el recipiente de ella no está obligado a seguir sus lineamientos. Sin embargo, por tratarse de opiniones oficiales del funcionario ejecutivo de mayor jerarquía encargado de la administración de la justicia, en realidad son de un gran valor persuasivo. Véase C.I. Gorrín Peralta, Fuentes y proceso de investigación jurídica, Orford, Ed. Equity Pub. Co., 1991, pág. 258.
Sobre el particular, cabe destacar que una mayoría de las cortes estatales en Estados Unidos entiende que, lejos de ser mandatorias, las opiniones del Secretario de Justicia constitu-yen guías para las agencias del gobierno en ausencia de una determinación judicial. (Enfasis y escolio omitidos.)
Por las mismas razones, no nos cabe duda de que la interpretación de la O.C.A.M. no tiene carácter vinculante. Sin embargo, tampoco dudamos de que la asesoría de la *793 O.C.A.M. es crucial en aspectos fiscales. Incluso, estamos convencidos de que la legislatura municipal de Añasco in-terpretó erradamente la Ley de Municipios Autónomos al concluir que no era necesaria la aprobación del reglamento previo a la concesión del aumento al alcalde. La legislatura municipal confió en la interpretación de la O.C.A.M. y eso la llevó a un juicio equivocado. En conclusión, la Resolu-ción Núm. 15 fue otorgada sin cumplir con el requisito del reglamento exigido por la Ley de Municipios Autónomos.
IV
Procedemos ahora a atender si procede que el entonces alcalde de Añasco devuelva lo que se le pagó indebida-mente.
Como se sabe, el alcalde recibió sumas de dinero rela-cionadas al aumento de sueldo que le fue concedido indebidamente. En aquel momento se le pagó al entonces alcalde en la confianza y con la creencia de que se estaba cumpliendo con una obligación válida. Todas las partes su-ponían en aquella fecha que el alcalde tenía derecho a re-cibir el aumento de sueldo. Esa retribución se trató, clara-mente, del cobro de lo indebido.
El Art. 1795 del Código Civil, 31 L.P.R.A. see. 5121, recoge la doctrina del cobro de lo indebido y establece:
Cuando se recibe alguna cosa que no había derecho a cobrar, y que por error ha sido indebidamente entregada, surge la obligación de restituirla.
Hemos reconocido que para que se configure la doctrina del cobro de lo indebido es necesaria la concurrencia de tres requisitos: (1) que se produzca un pago con la intención de extinguir una obligación; (2) que el pago realizado no tenga una justa causa, es decir, que no exista obligación jurídica entre el que paga y el que cobra, o si la obligación existe, que sea por una cuantía menor a la pa- *794 gada, y (3) que el pago haya sido hecho por error y no por mera liberalidad o por cualquier otro concepto. Sepúlveda v. Depto. de Salud, 145 D.P.R. 560, 566 (1998).
Ahora bien, este Tribunal adoptó en Arandes v. Báez, 20 D.P.R. 388 (1914), la distinción entre el error de hecho y el error de derecho. Es norma vigente que en la doctrina del cobro de lo indebido solo el error de hecho, y no el de dere-cho, da lugar a la obligación de restituir. Sepúlveda v. Depto. de Salud, supra, pág. 567; Aulet v. Depto. Servicios Sociales, 129 D.P.R. 1 (1991).
En Sepulveda v. Depto. de Salud, supra, pág. 568, este Tribunal definió por primera vez que el error de derecho es
... aquel en el que incurre quien actúa sin ajustarse a lo dispuesto por una norma jurídica vigente. En el contexto del cobro de lo indebido, comete error de derecho quien realiza un pago bajo la creencia de que el mismo le es exigible en derecho, bien por desconocimiento de la norma que lo descarga del pago, bien por una interpretación errónea del derecho aplicable. (Escolio omitido.)
Asimismo, explicamos que el error de hecho se refiere “a quien obra a base de unos hechos que no son los verdaderos”. Sepúlveda v. Depto. de Salud, supra, pág. 568. También indicamos que “debemos entender que se cometió un error de hecho cuando, aun conociendo los hechos verdaderos, se produce una equivocación meramente formal o de trámite”. íd. Ello es lo que tradicionalmente se conoce como error humano. Ejemplo de esto es un error matemático. Con estas definiciones este Tribunal entendió que se eliminaría la duda de cuáles son los elementos de la doctrina del cobro de lo indebido. Incluso, explicamos entonces sobre quién recae la carga de la prueba al utilizar esta doctrina.
Como vemos, la doctrina del error de derecho exime a la persona que recibió el pago indebido de la devolución de lo pagado. Incluso, en Aulet v. Depto. Servicios Sociales, supra, pág. 48, indicamos que “ante el error de derecho no *795 procede la devolución de lo indebidamente pagado, aun cuando se trate de fondos públicos”. Véanse: A.C.A.A. v. Bird Piñero, 115 D.P.R. 463, 467 (1984); Cartagena v. E.L.A., 116 D.P.R. 254, 257 (1985).
Para la adopción de esta distinción, al amparo de la doctrina del cobro de lo indebido, se utilizó como fundamento la jurisprudencia del Tribunal Supremo de España y varios tratadistas españoles que interpretaban de esa manera el Art. 1895 del Código Civil español, equivalente al Art. 1795 del Código Civil de Puerto Rico, supra. Sin embargo, esta distinción fue abandonada en la jurisprudencia española a partir de la Sentencia de 7 de julio de 1950. En el caso de Sepúlveda v. Depto. de Salud, supra, la parte apelante nos solicitó que adoptáramos la nueva posición y que revocáramos toda la jurisprudencia relativa a que sólo el error de hecho, y no el de derecho, permite la devolución de lo pagado indebidamente. En aquella ocasión no acogimos la petición porque el caso se trataba de una controversia sobre un error de hecho. Véase Sepulveda v. Depto. de Salud, supra, pág. 567 esc. 8.
Hoy tenemos la ocasión para poner nuestra jurispru-dencia al día con la corriente doctrinal más moderna. La Sentencia del Tribunal Supremo de España de 7 de julio de 1950 dicta, en lo pertinente, que
[e]l artículo 1895, de cuyo cumplimiento se trata, no distingue entre el error de derecho y el error de hecho limitándose a declarar que cuando se recibe alguna cosa que no había dere-cho a cobrar y que por error ha sido indebidamente entregada surge la obligación de restituirla, y así es justo que sea, pues de otro modo vendría a sancionarse un enriquecimiento in-justo fundado en el error ajeno. (Énfasis suprimido.) Sentencia de 7 de julio de 1950, Núm. 1237/1950 XVII Repertorio de Jurisprudencia, Aranzadi 743.
Sobre este particular, nos indica Puig Brutau que:
Tanto García Goyena, al comentar el art. 1895 del Proyecto de 1851, como Benito Gutiérrez, sobre la base de las Partidas, limitaban la repetición al caso del error de hecho, opinión que siguió la doctrina posterior al Código. Pero más tarde, De *796 Buen, Pérez y Alguer, etc. han sostenido que el derecho de repetición es procedente tanto si el error es de hecho como de derecho (es decir, tanto si recae sobre un acontecimiento como sobre una disposición legal), pues el art. 1895 no distingue y el antiguo artículo 2.0 (véase en la actualidad el 6.-1) no es apli-cable al caso. Es el criterio que prevalece en la actualidad. (Escolio omitido.) J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1983, T. II, Vol. III, pág. 36.
Opina Diez-Picazo que "[la] doctrina moderna entiende, con mayor acierto, que la ignorancia de la ley como excusa del cumplimiento de la misma y el error o la ignorancia sobre la ley como motivo de irregularidad de un contrato, se mueven en órbitas distintas”. L. Diez-Picazo, Funda-mentos del Derecho Civil Patrimonial, 6ta ed., Madrid, Ed. Tecnos, 2007, Vol. 1, pág. 225. Con ello avala la nueva pos-tura que interpreta que el derecho de repetición es proce-dente tanto si el error es de hecho como de derecho.
Del mismo modo, el Profesor Godreau ha realizado ex-presiones en las que criticó el caso de Sepulveda por reite-rar la doctrina vigente y no acoger la nueva corriente es-pañola, en particular en lo referente al Estado y sus fondos. Expresó:
Más aún, me parece que la vieja teoría [refiriéndose a la vigente en P.R.] de que si se trata de un error de derecho, a saber, la interpretación errónea de la ley o de los reglamentos, ello elimina el deber de restituir, no puede aplicársele al Estado. Si así fuera, el derecho favorecería la corrupción, per-mitiéndole a los funcionarios públicos hacer interpretaciones erróneas o discrecionales de las leyes para burlar los límites de los fondos que pueden erogarse y favorecer así a quienes el gobernante o administrador de turno prefiera. Como se trata-ría de una interpretación errónea de la ley, o como se trataría de realizar pagos en exceso conociendo la verdad de los hechos y de los límites impuestos por ley, el propio Estado vendría impedido de reclamarle al beneficiado la restitución de lo pa-gado ilegalmente (Énfasis suplido.) M. J. Godreau, Derecho Civil Patrimonial, 68 Rev. Jur. U.P.R. 519, 540-541 (1999).
Como se sabe, los elementos para descartar un precedente judicial son: (1) si la decisión anterior era claramente errónea; (2) si sus efectos sobre el resto del ordenamiento son adversos, y (3) si la cantidad de personas que *797 confiaron en ella es limitada. Pueblo v. Díaz De León, 176 D.P.R. 913 (2009); Pueblo v. Camacho Delgado, 175 D.P.R. 1 esc. 4 (2008). Las normas cambian con la intención de asegurar el fimcionamiento adecuado del sistema judicial y para eliminar confusiones en derecho. Ello se alcanza, al revocar casos anteriores que son incompatibles con la acti-tud predominante.
Como bien señalan los tratadistas, la nueva teoría originada en España resulta más justa. Si el error se alega como excusa del cumplimiento de una ley, éste no puede tomarse en cuenta y la ley debe cumplirse. Por eso, acogemos hoy la corriente moderna, actualizamos el derecho puertorriqueño y excluimos la distinción entre el error de hecho y derecho para efectos de la restitución. Así pues, quedan derogados de manera prospectiva los casos que contradigan lo aquí resuelto.(2)
V
En este caso, el Art. 3.012 de la Ley de Municipios Au-tónomos, supra, establece que la legislatura municipal “aprobará” el reglamento que regirá los procedimientos de evaluación, determinación y adjudicación del sueldo del alcalde. Ese artículo no dispone en cuánto tiempo debe ser aprobado ese reglamento. Por ello, la O.C.A.M. tuvo que emitir una opinión sobre ese particular, en la que sostuvo que el reglamento no era un requisito sin el cual se pudiera aprobar un aumento de sueldo al alcalde. Al ser así, no cabe otra solución que concluir que ello constituyó un error de derecho. Aquí no se trató de un error de trámite de una agencia sino de una interpretación equivocada sobre un artículo de la Ley de Municipios Autónomos. Como vemos, el error en este caso es de derecho, ya que la legislatura *798 municipal actuó sin ajustarse a la norma jurídica vigente. Por lo tanto, al amparo de la doctrina del cobro de lo inde-bido aplica la distinción entre el error de hecho y de derecho. Consecuentemente, conforme al derecho vigente hasta hoy, no procedía la devolución del dinero por parte del alcalde.
Ello era así aunque se trata de fondos públicos. No se trata de rma interpretación discrecional de la legislatura municipal para favorecer al alcalde, sino de la opinión le-gítima de la agencia encargada por ley para asesorar al municipio acerca de la ley aplicable. Es evidente también que no se trató de una burla o una abrogación de los lími-tes de una ley con intención de favorecer al alcalde. Por ello, la norma vigente establece que el error de derecho en este caso no amerita la restitución del dinero. La norma moderna acogida en este caso aplicará en casos futuros so-bre esta materia. No es posible extenderla retroactiva-mente a unas partes que confiaron en el estado de derecho vigente al aprobar y desembolsar el aumento de sueldo.
VI
En vista de lo anterior, resolvemos que todo aumento de sueldo a un alcalde debe estar precedido por la aprobación del reglamento que dispone el Art. 3.012 de la Ley de Municipios Autónomos, supra, y que al conceder el aumento, la legislatura municipal debe tomar en consideración como guías, los siete criterios esgrimidos en la ley. Además, la legislatura municipal podrá utilizar cualquier otro criterio que entienda pertinente y así lo hará constar. Ahora bien, concluimos que la acción por cobro de dinero es improcedente. Conforme a todo lo anterior, confirmamos al Tribunal de Apelaciones, aunque por fundamentos diferentes.
Por último, reiteramos que cuando se recibe alguna cosa que no había derecho a cobrar y que ha sido entregada, ya sea por error de hecho o de derecho, surge el *799 deber de restituirlo.(3) Ahora bien, como las partes confia-ron en el estado de derecho distinto, vigente hasta hoy, lo justo es que la norma que aquí establecemos sea prospectiva.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió con una opinión escrita, a la que se unió la Juez Asociada Señora Rodríguez Rodríguez. La Jueza Asociada Señora Fiol Matta disintió sin opinión escrita.
Opinión disidente emitida por el Juez Presidente Señor Hernández Denton, a la cual se une la Juez Asociada Señora Rodríguez Rodríguez.
Hoy, una mayoría de este Tribunal resuelve correcta-mente que el aumento de salario del alcalde de Añasco, Hon. Pablo Crespo Torres, fue ilegal. No obstante, la opi-nión del Tribunal aplica incorrectamente la doctrina de error de derecho y, en un extenso dictum, la revoca innecesariamente. Por entender que, en el caso de autos, la inexistencia del reglamento exigido por el Art. 3.012 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos), Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. see. 4112), impedía, sin más, la aprobación del aumento de sueldo en controversia y que toda interpretación ulterior hecha por el Tribunal era innecesaria, ordenaríamos la res-titución del salario pagado ilegalmente. Por lo tanto, res-petuosamente disentimos.
*800 I
El 6 de mayo de 1998, la legislatura municipal de Añasco aprobó la Resolución Núm. 15, Serie 1997-1998, a los fines de aumentar el salario del entonces alcalde, Hon. Pablo Crespo Torres, de $3,000 a $4,000 mensuales. La resolución se limitó a expresar que “el costo de vida es tan alto” para los funcionarios públicos como el alcalde, que, “se envuelve en tantas actividades y gestiones para bene-ficio de su pueblo”, que era necesario aumentarle el sala-rio, “[d]e tal forma que las gestiones que realiza dicho Eje-cutivo Municipal no vaya[n] en detrimento de su salud económica”.
Luego de haber adoptado la resolución, la legislatura municipal aprobó el reglamento para establecer el proceso de evaluación y adjudicación del salario del alcalde. Es de-cir, que al momento de aprobar el aumento, el municipio de Añasco no tenía un reglamento para ello. Por su parte, la Oficina del Contralor de Puerto Rico, tras realizar una au-ditoría del periodo en cuestión, emitió el Informe M-01-09, mediante el cual opinó que la legislatura municipal aprobó este aumento de forma incorrecta.
A raíz de ese informe, el Estado Libre Asociado (E.L.A.) demandó al alcalde en raía acción de sentencia declarato-ria y cobro de dinero. En síntesis, le requirió que devol-viera todas las sumas cobradas a base de la Resolución Núm. 15. A tales efectos, alegó que la legislatura municipal debió haber cumplido con los requisitos que impone el Art. 3.012 de la Ley de Municipios Autónomos, supra.
En respuesta, los demandados negaron que el aumento de salario fuera ilegal o ultra vires. Esto, pues, según ar-guyen, al momento de conceder el aumento se cumplió con las directrices y recomendaciones de la Oficina del Comi-sionado de Asuntos Municipales (O.C.A.M.). Así las cosas, el Tribunal de Primera Instancia declaró “ha lugar” una “Moción de Sentencia Sumaria Parcial” contra el E.L.A. y desestimó la demanda. El foro apelativo intermedio con-firmó la sentencia sumaria.
*801 II
El Art. 3.012 de la Ley de Municipios Autónomos, supra, dispone que:

La Legislatura Municipal aprobará, con el voto de dos terce-ras partes de los miembros del cuerpo, el reglamento que regirá los procedimientos de evaluación, determinación y adjudica-ción, del sueldo del alcalde.

Al considerar aumentos de salarios para el alcalde, la Legis-latura tomará en consideración, entre otros, que dicho cuerpo encuentre necesarios, los siguientes criterios:
1. El presupuesto del municipio y la situación fiscal de los ingresos y gastos reflejados en los informes de auditoría o single audit.
2. La población y el aumento en los servicios a la comunidad.
3. El cumplimiento con los controles fiscales y administra-tivos establecidos por O.C.A.M., la Oficina del Contralor y el gobierno federal.
4. La complejidad de las funciones y responsabilidades del Primer Ejecutivo.
5. El costo de vida, información que deberá suplir la Junta de Planificación a solicitud de la Legislatura Municipal.
6. La habilidad de atraer capital y desarrollo económico al respectivo Municipio.
7. Tomar en cuenta los sueldos devengados por los miem-bros de la Asamblea Legislativa y los Secretarios del Gabinete Constitucional. (Énfasis suplido.)
Como se deduce de lo anterior, el Art. 3.012 reseñado impone dos requisitos a la legislatura municipal para po-der aprobar cualquier aumento de salario a un alcalde. En primer lugar, le requiere a la legislatura municipal el de-ber de aprobar un reglamento que regule ese proceso y, en segundo lugar, dispone que la legislatura municipal “toma-rá en consideración”, como mínimo, los siete criterios enu-merados, al momento de aprobar el aumento. Siendo esto una obligación expresa de la legislatura municipal, cual-quier aumento de salario contrario al referido mandato de ley representa un curso de acción ultra vires. No empece a lo anterior, una mayoría de este Tribunal resuelve que con-siderar los criterios establecidos en el Art. 3.012 no son una *802 obligación de la legislatura municipal, sino unas meras guías o sugerencias.
El artículo fue incluido mediante enmienda a la Ley de Municipios Autónomos, a raíz de la aprobación de la Ley Núm. 36 de 13 de abril de 1995 (1995 (Parte 1) Leyes de Puerto Rico 194). Asimismo, el Informe de la Comisión de Asuntos Municipales de 26 de agosto de 1993 sobre el In-forme Sustitutivo del P. de la C. 627, 12ma Asamblea Le-gislativa, 2da Sesión Ordinaria, que luego se convirtió en la Ley Núm. 36 de 1995, supra, expresó que el texto pro-puesto sobre el Art. 3.012 buscaba que la entonces llamada asamblea municipal tuviera unas guías para establecer un salario justo según las capacidades del alcalde y las cir-cunstancias económicas de los municipios. Véase Informe sustitutivo del P. de la C. 627, supra, págs. 7-9. A tales efectos, dispuso:
La disparidad en los sueldos de los Alcaldes responde a la falta de guías y criterios uniformes que puedan aplicarse por la Asamblea Municipal para determinar el aumento de salario del Primer Ejecutivo. La importancia de las disposiciones que se introducen en la medida sustitutiva permiten que la Asam-blea Municipal eval[ú]e la capacidad fiscal del municipio para compensar adecuadamente al Alcalde tomando en considera-ción el presupuesto, la población, la complejidad de las funcio-nes, las responsabilidades del Primer Ejecutivo y el costo de vida. Este último, es un dato indispensable que deberá suplir la Junta de Planificación a las Asambleas. íd., pág. 9.
Por su parte, la O.C.A.M. había circulado varios memo-randos a distintos municipios en los que había informado que los criterios del Art. 3.012 de la Ley de Municipios Autónomos, supra, no eran una lista concreta de requisi-tos, sino unas meras guías o factores sugeridos a la legis-latura municipal y que, de incumplir con la consideración de alguno de ellos, no se anularía el proceso de aumento. En otras palabras, que según la interpretación legal de la O.C.A.M., llevar a cabo el segundo de los requisitos del Art. 3.012, supra, un análisis previo de los criterios allí dis-puestos, no era un requisito sine qua non para realizar el aumento. La opinión mayoritaria extiende equívocamente *803 esa interpretación de la O.C.A.M. al primer requisito de este artículo. Así, sostiene que existía una confusión ge-rmina por parte de los municipios y la O.C.A.M. sobre la obligatoriedad de cumplir tanto con el requisito de un re-glamento previo como con el análisis de los criterios mencionados. Al fusionar ambos requisitos de ley, la opi-nión mayoritaria llega a la conclusión de que existía un error de derecho sobre todas las disposiciones el Art. 3.012, supra. No estamos de acuerdo. Las opiniones legales de la O.C.A.M. podían ser confusas sobre la obligatoriedad de considerar los criterios del mencionado artículo, mas no sobre el requisito de un reglamento previo.
Cabe señalar que surgen serias dudas sobre la razona-bilidad de la interpretación dada por el municipio de Añasco a las opiniones legales de la O.C.A.M. Por ejemplo, la opinión dirigida al municipio de Patillas, a la cual hace mención la opinión mayoritaria, dispone claramente que “puede decretarse el aumento al alcalde, certificándose el haberse utilizado los criterios de la Ley 36”. Opinión legal de la O.C.A.M. dirigida a la asamblea municipal de Pati-llas, 5 de julio de 1995. Aun tomando como cierta la confu-sión genuina que pudo haber tenido la Legislatura Municipal de Añasco sobre la obligatoriedad de tomar en consideración los factores en controversia, nada sugería que no tenían que, como mínimo, expresarlo en la Resolu-ción para aumentar el salario al alcalde. Peor aún, la O.C.A.M. sostuvo que ello debía certificarse.
De otra parte, la resolución aprobada por la Legislatura Municipal de Añasco no mencionó ninguno de los criterios que debió haber considerado. Por el contrario, la legisla-tura municipal aprobó una resolución en extremo lacónica y despachó el asunto expresando que el costo de vida del alcalde es alto y que los primeros ejecutivos realizan mu-chas funciones. Tampoco existía un reglamento según lo exige la ley. Todo lo anterior nos lleva a concluir que aquí no hubo ningún error de derecho, lo que hubo fue una fla-grante violación de ley y un aumento de salario ilegal.
*804 Sugerir, como hace la mayoría, que la Ley de Municipios Autónomos meramente invita a las legislaturas municipa-les a tomar en consideración los criterios dispuestos en el Art. 3.012, supra, al momento de aumentar el salario de sus alcaldes es problemático y peligroso. Esa misma mayo-ría, que recientemente tomaba conocimiento judicial de la “crisis económica y fiscal” que atraviesan las finanzas pú-blicas, hoy le facilita a los municipios que enfrentan pro-fundos déficits presupuestarios aumentar el salario de sus alcaldes sin que medie una evaluación cuidadosa de sus finanzas y del trabajo realizado por el principal funcionario ejecutivo municipal, en la resolución requerida por ley. Poco lograba el legislador puertorriqueño al añadir aque-llos criterios a la Ley de Municipios Autónomos si mera-mente eran, como sostiene hoy el Tribunal, una simple guía ilustrativa. A nuestro entender, la Legislatura Municipal de Añasco estaba obligada, como mínimo, a consignar en la resolución, mediante la cual aumentó el salario del alcalde, su análisis y conclusión sobre esos criterios.
Actualmente existen múltiples casos sobre iguales cir-cunstancias ante los tribunales del país, por lo que resulta preocupante la ambigüedad de la norma que hoy se pauta. ¿Podrán alegar con éxito esos otros alcaldes que también fueron víctimas de una confusión genuina o un error de Derecho? ¿Cuántos otros pagos realizados en abierta viola-ción de la ley constituyen un error de derecho?
III
En vista de que había una disposición clara y precisa sobre el procedimiento que se ha de seguir para aumentar válidamente el salario del alcalde y que la legislatura municipal incumplió tanto con la consideración de los criterios establecidos en el Art. 3.012, supra, como con el requisito de tener un reglamento para ese propósito, concluimos que el aumento de salario al alcalde de Añasco se aprobó ilegalmente. Siendo ese aumento ultra vires, sólo corres-pondía revocar la sentencia sumaria parcial dictada por el *805 Tribunal de Primera Instancia y confirmada por el foro apelativo intermedio, y ordenar la restitución de los sala-rios pagados ilegalmente. Por ende, disiento respetuosa-mente del curso de acción seguido por la mayoría de este Tribunal al ensanchar innecesariamente la solución del caso de autos al punto de revocar una doctrina cuando no era necesario abordarla.
A raíz de la opinión emitida hoy por el Tribunal, le co-rresponde ahora a la Asamblea Legislativa definir el al-cance del Art. 3.012 de la Ley de Municipios Autónomos, supra.

 En su opinión disidente, el Juez Presidente Señor Hernández Denton señala que es “problemático y peligroso” que los criterios enumerados en el Art. 3.012 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4113, sean guías que no impidan que se le aumente el salario a los alcaldes a pesar de la indudable crisis económica y fiscal por la que atraviesa el Gobierno. Toda vez que ese es el lenguaje preciso que surge del historial legislativo, nos parece que la objeción de la disidencia no es a esta opinión, sino al citado Art. 3.012. Al respecto, basta con señalar que es la Asamblea Legislativa “la que luego de considerar todos los factores envueltos incluyendo el impacto económico” debe pasar juicio sobre la sabiduría o defectos de este artículo. Torres García v. F.S.E., 111 D.P.R. 469, 474 (1981). Si el legislador logró poco con esa ley, como sostiene la disidencia, en manos del legislador también está modificarla. *791 “Nuestra función es interpretar la ley y no juzgar su bondad o sabiduría.” Famania v. Corp. Azucarera de P.R., 113 D.P.R. 654, 657-658 (1982), citado en Mun. Trujillo Alto v. Cable TV, 132 D.P.R. 1008, 1019 (1993).

 Véanse, entre otros: Sepúlveda v. Depto. de Salud, 145 D.P.R. 560 (1998); Aulet v. Depto. Servicios Sociales, 129 D.P.R. 1 (1991); A.C.A.A. v. Bird Piñero, supra; Cartagena v. E.L.A., 116 D.P.R. 254 (1985); American R.R. Co. of P.R. v. Wolkers, 22 D.P.R. 283 (1915); Arandes v. Báez, 20 D.P.R. 388 (1914).

 En su opinión disidente, el Juez Presidente Señor Hernández Denton pre-gunta: “¿Cuántos otros pagos realizados en abierta violación de la ley constituyen un error de derecho?” La pregunta es irrelevante porque a partir de lo resuelto hoy siempre habrá una obligación de restituir, a diferencia de la norma anterior que la disidencia rechaza derogar.